### DURAND et al v. GREEN et al.

#### (Circuit Court. E. D. Pennsylvania. February 19, 1894.)

#### No. 6.

**1. PATENTS FOR INVENTIONS—CLAIM—PROCESS AND PRODUCT.**
In letters patent No. 252,721, granted February 14, 1882, to Horace Koechlin, for the "manufacture of colors or dyestuffs," the claim was as follows: "The improvement in the manufacture of coloring matters, consisting in the production of violet coloring matters by the action of nitroso derivatives of the tertiary amines on tannin, or equivalent reaction." *Held*, that this claim was for a process, and not for the resulting product; and it cannot be extended to cover the latter on the ground that the product inheres in the process.

**2. SAME—SPECIFICATION—ENLARGEMENT OF CLAIM.**
The claim being distinctly for the process only, it cannot be enlarged to cover the product as well, by reference to statements in the specification that "the products, as well as the methods of producing the same, constitute part of the invention, which comprises, therefore, the preparation and the coloring matters above mentioned."

In Equity. On final hearing. Bill by L. Durand, Huguenin & Co. against Green, Schulze-Berge & Koechlin, for infringement of patent.

Livingston Gifford, for complainants.

Cowen, Dickerson, Nicoll & Brown, for defendants.

DALLAS, Circuit Judge. The complainants, claiming to be assignees and present owners of letters patent No. 252,721, issued to Horace Koechlin on February 14, 1882, for "manufacture of colors or dyestuffs," filed their bill charging the defendants with infringement thereof. The latter, by their answer, have set up several defenses, including a denial of the infringement alleged. The case thus presented has been heard and considered upon the pleadings and proofs, and is now for decision.

He who conceives a new method, and by that method produces a new substance, invents, by one and the same exercise of the creative faculty, both a process and a product. The exploit is single, though the achievement is double. The manner of producing and the thing produced may, of course, be separately contemplated, but the inventive act from which both are derived is not divisible. The fruit is twofold, but the germ is one. This seems to me to be self-evident; but, were demonstration required, it would be found in the characteristically vigorous and lucid opinion of Judge Greer in the case of Goodyear v. Railroad Co., 1 Fish. Pat. Cas. 626, Fed. Cas. No. 5,563. But from this unquestioned premise a conclusion was reached in

that case which does not result from its acceptance in this one. It is not necessary to challenge the correctness of that conclusion in order to support my own. If it were, I would greatly distrust the latter. It may well be conceded that, at the time the Goodyear Case was decided, it was right to hold that a patent which claimed a process, but which also disclosed that, by the practice of that process, an entirely new fabric was produced, covered and included the latter as well as the former. The doctrine of that decision is that, under the act of 1836, to the peculiar language of which the opinions repeatedly refer, the exclusive privilege conferred by a patent is coextensive with the actual invention, as discoverable from the entire instrument; and from that doctrine it necessarily resulted in that case that the product disclosed, as well as the process claimed, was protected. The first general statute passed by congress in pursuance of its power to secure to inventors, for limited times, the exclusive right to their respective discoveries, is that of 1790. That statute was, however, repealed by the act of 1793, which was afterwards supplemented by the enactments of 1794, 1800, 1819, and 1832; and these last-mentioned statutes comprised the whole of the positive law of the subject until, by the act of 1836, the present more complete and rational patent system was inaugurated. None of the earlier acts had contained any provision with respect to claims. The act of 1793 required that every petitioner for a patent should "deliver a written description of his invention," and that the letters patent should "be made out, * * * reciting the allegations and suggestions of the said petition, and giving a short description of the said invention or discovery;" but this is all that was made necessary, and it appears from the forms given in the appendix to Fessenden on Patents (published in 1822) that it was not the practice to deliver with the petition, or to recite in the patent, anything more than the law directed. The former was accompanied by a specification merely, and to the latter was annexed a schedule "containing a description in the words of" the petitioner, and which "recited the specification," and nothing else. It is important to bear in mind that, during this era of unperfected patent law, patents were granted without examination by any governmental agency for ascertainment of either the novelty or the utility of the asserted invention. It was sufficient that the petitioner "alleged" and "made oath" that he "believed" it to be new and useful. Upon this alone the patent issued; but it was accepted in reliance, solely, upon the recipient's own unaided investigation, and with the unmitigated hazard that, by reason of subsequently appearing lack of novelty or utility, it might turn out to be absolutely worthless. Subject to this risk, however, he was secured in his invention as described, and, as has been shown, was not required to, and did not, present any claim whatever. By the act of 1836 a radically different and vastly superior policy was adopted, and its administration provided for. In the interest both of the public and of inventors, investigation by the patent office was established for the determination of, at least, the probable validity of a patent, in advance of its issuing. The increased, and increasing, demands of other duties upon the officers to

whom the execution of the patent laws had theretofore been confided, and the almost marvelous extent of the inventive genius displayed by our countrymen, necessitated the erection of the separate department or bureau, the creation of which was the primary object of the statute of 1836. But the principal new feature introduced by it in mode of procedure was that to which I have referred,—thorough and orderly preliminary examination to test the right of each applicant to receive the patent applied for. The work thus devolved upon the patent office was very considerable, and in its performance the exercise of great care and skill was requisite. That it might not be rendered unnecessarily difficult, it was but reasonable to require that every applicant should not merely, as under the act of 1793, "deliver a written description of his invention," but should also, as part of that description, "particularly specify and point out the part, improvement, or combination, which he claims as his invention or discovery;" and such is the precise addition which, in this regard, is made by the act of 1836, § 6, to that of 1793. Still, it was directed (1836, § 5) that the patent, although annexing the specification (as above stated) of what the applicant claimed as his invention should "contain a short description or title of the invention or discovery, correctly indicating its nature and design," and should "grant the full and exclusive right to the said invention." It was with express reference to, and upon construction of, these terms of the act of 1836, that it was decided in Goodyear v. Railroad Co. that the patentee's monopoly was not, in that case, limited by his claim, but extended to the invention which was described, and the nature and design whereof were correctly indicated in the specification. After the passage of the act of 1836, the profession recognized the convenience and utility of formally stating the claim for which it made provision at the end of the specification; and, from the practice which ensued, as well as for other manifest reasons, the courts were led (as in Goodyear v. Railroad Co.) to give to such claims much, but not controlling, weight in determining the scope of patent rights.

I turn now to the act of 1870, under which the patent in suit was granted. It is, as to the subject under consideration, markedly different from the act of 1836. It mentions the specification and the claim as two distinct things, and requires an inventor, not merely to specify and point out, but to "particularly point out and distinctly claim," his invention. The change in words is very slight, but the difference in meaning is obvious and important. By the one act he was instructed to specify what he alleged to be his invention; by the other he is told that the invention for which he desires a patent he must distinctly claim. The fact that, except as to the change just indicated, the words used in the two acts, when dealing with this matter, are substantially identical, is quite convincing that the draughtsman of the act of 1870, actually as well as in presumption of law, thus peculiarly varied the language of the act of 1836, not without reason, but with a definite purpose. Nor is the legislative design hard to discern. The practice of the profession, and the opinions of the judges to which I have adverted, had suggested that the embarrassments attendant upon the efforts of the courts to construe

vague and indefinite patents might, without doing injustice to patentees, be much alleviated by denying protection for anything, though original, new, and useful, which was not also distinctly claimed. In brief, it was prescribed that the claim must be taken as defining precisely what the invention covered by the patent is; and hence the true question is not what the patentee might have claimed, but what he has claimed,—the latter, not the former, being made the measure of his right. The rules for determining what is claimed in any case are few and simple, and are not peculiar to the patent law, except as respects the doctrine of liberality in construction in favor of pioneer inventors. The benefit of that doctrine is claimed by these complainants, and, without pausing to examine their title to invoke it, for it cannot avail them, I concede, for the present purpose, its applicability to the achievement of Koechlin. As to the rest, it is sufficient to say that, if the language of a claim has a plain and distinct meaning, that meaning must prevail. That which is to be ascertained is, of course, the intent of the claimant; not, however, that intent as elsewhere, or in some other manner, disclosed, but as expressed in the claim itself. If the meaning of the claim be uncertain,—that is to say, if the claim be ambiguous, but still be reasonably capable of elucidation by reference to the specification,—the latter may be resorted to for interpretation of the former, but never to change the plain meaning of its language, nor to extend it beyond the limits imposed by its own terms, and a fortiori not so as to create a separate or additional claim.

From these preliminary observations I now pass to the consideration of the only claim of the patent involved, which claim is as follows: "I claim the improvement in the manufacture of coloring matters, consisting in the production of violet coloring matters by the action of nitroso derivatives of the tertiary amines on tannin, or equivalent reaction, substantially as described." Is this claim for a process, or for a product, or for both? It is true that the word "manufacture" may be used to denote either the act of manufacturing or a manufactured article, and that the word "production" may designate as well a thing produced as the operation of producing. Each of these words does possess the double sense which the complainants ascribe to it; and, if any insurmountable difficulty in comprehending the claim resulted from this, the consequence, perhaps, might be that the patent would fall for want of any distinct claim to support it. But these words, when properly related to their context, do not render the claim equivocal. The improvement is expressly stated to be "in the manufacture of coloring matters,"—that is to say, in making coloring matters; for otherwise it would be necessary to suppose that (at this point) it was intended to claim the substances called "coloring matters," which would be absurd. Then, the claim, continuing, explains that the referred-to improvement in manufacture of coloring matters consists in—what? In a substance; in a fabric; in an article of merchandise? No; but "in the production of violet coloring matters." I do not think it possible than any person having the least degree of skill in the use of the English language would so have expressed himself if his intention had been to

claim "coloring matters," restricted to violet coloring matters, either generally or when produced by a particular method. On the other hand, even if the claim ended here, its natural meaning (and that is the meaning which should be adopted) would clearly require its acceptance as a claim for a process only. But, as we proceed in the reading of the claim, the notion that it is, or was intended to be, for a product, becomes even more surely inadmissible, for from what follows it appears that what is claimed is not something which exists or is to be created, but something to be done,—to be accomplished by "action" or "reaction." On the whole, therefore, I am of opinion that this claim does not require, and consequently does not admit of, interpretation, but that, upon a fair and natural reading of it, unaided by construction, it appears to be, and therefore is, a claim for a process, and for nothing else. As, however, it has been very earnestly urged that it should be so extended as to include the product, because of the asserted broader scope of the invention as described and designated in the specification, I will briefly refer to that part of the patent. In the first place, it is there said: "My invention consists in the production of violet coloring matters by the action," etc.; and certainly, if this language be related to the closing words of the claim, "substantially as described," its only tendency is to sustain the view I have expressed. But the particular portion of the specification upon which the complainants rely is this: "Other coloring matters can be made by similar reactions. The products, as well as the method of producing the same, constitute part of the invention, which comprises, therefore, the preparation and the coloring matters above mentioned." This statement, however, does not aid them—First, because an existing claim cannot be enlarged by, nor an additional one be imported from, the specification; and, second, because the assertion that "the products * * * constitute part of the invention," when taken in connection with their omission from the claim, pregnantly indicates that the applicant had process and products distinctively in mind, and yet, either in disregard of the statute, or because he was satisfied to secure only process, limited his claim to process alone.

It remains only to notice the contention that in this instance the product inheres in the process, and that, therefore, the claim of the one necessarily includes the other. For reasons already stated, this position is untenable. Product and process are quite distinct matters, even where both are created by the same inventive act. If the point here was the same as in Goodyear v. Railroad Co., it might be decided favorably to the complainants; but as, in this case, the question is not as to the scope of the invention, but as to the subject-matter of the patent as defined by the claim, it must be determined against them. It was not held in Goodyear v. Railroad Co. that, because the process was expressly claimed, the product was constructively claimed. The theory upon which the judgment was founded is quite different. It is that, though not at all included in the claim, product was patented, because it appeared, from other parts of the instrument, to have been invented. In other words, the scope of the patent was determined, not by construction of the

claim, but by exploring the specification in search of invention; and invention disclosed, not claimed, was made the measure of right. The difference is a palpable one, and it clearly distinguishes that case from this one.

I have reached the conclusion that the only claim of the patent in suit is for a process, and is not for a product; and, waiving any question as to whether use or sale of the product by the defendants jointly has been shown, it has at least not been established that they have in any manner used the process.   It results from this that the charge of infringement has not been sustained.   Other defenses were interposed, and the points which they involve have been very thoroughly and ably argued; but it is unnecessary, and therefore not desirable, that I should intimate any opinion upon them.   I do not do so; but upon the ground, and for the reasons, which have been stated, the bill is dismissed, with costs.