## SCHWARTZ v. HOUSMAN.

### (Circuit Court, E. D. New York. July 8, 1898.)

1. PROCESS PATENTS—INFRINGEMENT.

Infringement of a patent for a process of manufacture must be shown by satisfactory proof that defendant uses the process. Similarity or even identity of appearance in the product will not suffice.

2. SAME—INFRINGEMENT—METHOD OF EMBOSSING PAPER.

The Schwartz patent, No. 332,444, for an improvement in embossing plastic material, is confined to cards on which the whole surface sheet has been applied before the process of embossing begins, and does not cover any process for cutting letters or figures out of sheets of paper, and thereafter affixing them to the surface of the card.

3. SAME.

The Schwartz patent, No. 389,589, for an improvement in the art of "ornamenting cardboard with letters or designs, or both, for forming show, gift, or sign cards," in which the only novel feature claimed by the patentee is in so arranging the various operations that the same movement of the die cuts the letter out, and presses it upon the surface where it is to be affixed, is void for want of invention.

This is a suit in equity by Charles Schwartz against Moses Housman for infringement of two patents relating to the forming and embossing of cards, etc. Final hearing upon pleadings and proofs.

H. A. West, for complainant.

Wilton D. Donn, for defendant.

LACOMBE, Circuit Judge. This suit is brought upon two patents, both issued to complainant. The first (No. 332,444), dated December 15, 1885, is for an improvement in embossing plastic material. The specification sets forth that the invention—

"Relates more especially to a new method of embossing paper, and it has for its object to prevent the surface of the raised portions of the paper from cracking, as with the ordinary method, which gives the work a ragged and unfinished appearance. The invention consists in incising the upper surface of the sheet or card to be embossed with the outline of the letters or figures to be raised; the incisions being made relatively to the dies, and of sufficient depth only to pass through the upper layer or surface of the sheet, so that, when the sheet or card is submitted to pressure between the dies, the stretching of the fibers will not break or tear the surfaces encompassed by the incisions. * * * The sheet to be embossed has a thin facing sheet, usually of ornamental paper. Before submitting the sheet of cardboard to pressure between the embossing dies, I outline with a sharp instrument on the facing sheet the figures or letters to be raised in embossing the sheet. By the use of the sharp instrument the facing sheet is cut through, so as to sever from the remainder of the sheet the portion of the sheet which will be raised in embossing. In this manner the stretching of the fibers at [the edge of the raised portions] when the sheet is embossed does not break or tear the [raised] portions of the sheet, as by the old method, but leaves them flat and continuous, so that they form a perfectly smooth and continuous surface or finish for the raised faces of the letters or figures."

### The claim is:

"The method herein described of embossing paper and other plastic substances, which consists in incising the upper surface of the sheet to be embossed in outline of the figure to be raised; and then subjecting the sheet to pressure in embossing dies, and raising the material along the lines of incision, substantially as and for the purposes set forth."

It is manifest that this patent does not cover any process for cutting letters or figures out of sheets of paper, the letters or figures being thereafter affixed to the surface of the card. On the contrary, the process of the patent is confined to cards on which the whole surface sheet had been applied before the process of embossing began. The very difficulty which the patentee sought to remedy arose because the surface sheet was already affixed to the card, wherefore the material was exposed to strains when letters or figures were embossed; the material forced outward by the bosses pulling away from the rest of the material rigidly fastened to the surface of the card, and thus producing cracks and tears. If the surface sheet were not attached to the card, no such difficulty would occur. Complainant's patent therefore must be confined to a sheet or card already surfaced. It will be noted, also, that the process is twofold: first ("before submitting the * * * cardboard to pressure between the embossing dies"), the letters or figures are outlined with "a sharp instrument" (apparently not the embossing die) on the facing sheet, the facing sheet being cut through so as to sever the portion "which will be" raised in embossing from the rest of the sheet; second, the sheet to be embossed is "then" (i. e. after the incisions) subjected to pressure in the embossing dies. An alternative method is pointed out, whereby the letters are partly cut out of the rest of the surface sheet before such sheet is applied to the card. In both methods the letters or figures are cut in whole or in part, and the whole surface material, including so much as is embraced in the letters and figures, and also the rest of the surface sheet, is secured to the card before the embossing process begins. Or, in other words, the process is one whereby the surfacing or surface or upper layer of a card may be itself embossed, along with the card, without showing any evidences of distortion either on its flat or on its elevated surface.

Inasmuch as the claim is for a process of manufacture, infringement must be shown by satisfactory proof that defendant uses the process of the patent. Similarity or even identity of appearance in the product will not suffice. The evidence upon which the complainant relies to show infringement is as follows: The defendant admitted that a certain ornamental cardboard sign, known as the "Cartridge Sign," was made by him. Complainant testified that his experience as a sign maker enabled him to say from mere inspection that it had been made by the methods described in his two patents. Cross-examination, however, deprives this testimony of any weight, since the witness admits, as to another similar sign, which he, in like manner, at first decided to be an infringement, that, when he was assured it was not made according to his process, he thought he must be mistaken. Finally he admits that the cartridge sign could have been made without the use of his process. John Schafer testified that since 1885 he has made for defendant both embossing and stamping dies for show cards, according to design, including embossing dies similar in design to the lettering of the cartridge sign; that he supposed the die was intended to be heated when in use, but that nothing was said about that; that all embossing dies have a cutting edge surrounding the outlines of the letter or figure; and

that he "thinks it likely" the embossing die used in the manufacture of the cartridge sign was used hot, so as to melt the size, and cause letters or figures to adhere to the card. Lizzie Carroll testified that she worked in defendant's factory. She seems to have had very little to do with anything outside of her own duties (putting on size), and evidently knew nothing about the cartridge sign. She said, however, that, in the making of embossed signs, they used to put the paper they used to stamp by on the cards, and then used to take them, and put them into the press and emboss them; that there was a die in the press, heated by steam, and after the stamping was done in the press they "took them out, and pulled the papers off, and embossed them, and then would have the letters formed"; that she "thinks" they used paste on the paper they put in the press; that the die cut out the letters and applied them to the card at the same time; when the card was put in the press, there "was nothing only paper" between it and the die. This is not very clear, but it seems to indicate a process by which a letter or figure is embossed on the cardboard; and upon such letter or figure, as its surface layer, there is affixed a piece of paper which had been cut in the required shape out of a sheet of paper, which sheet, as a whole, never became a surface layer at all, within the terms of the patent. Jacob Klebansky, another employé of defendant, was either extremely stupid, or did not understand the English language sufficiently to answer intelligently. He was very positive that a certain sign, known as the "Rubber-Shoe Sign," was of defendant's make, but gave absolutely no information as to how it was made. Julia Hart, another employé of defendant, called by complainant, testified: That the show cards made by defendant were stamped in a press; paper and gold and silver leaf were put on the cards,—"just pasted on." Then, when the cards are sized ready for the leaf, they laid the leaf on, and then they were stamped. That the paper, which was of a different color from the color of the cardboard, was cut out by means of a chisel, and pasted on the cardboard by hand. William Sochefsky, another employé of defendant, testified as to a certain sign known as the "Stocking Sign," and produced the die with which it was made. The process he thus described:

"The die was fastened to the press; a counter was made for same; the card embossed, colored paper laid on same, and re-embossed; the outside of the stocking which was cut out by the embossing removed. * * * The black paper representing the stocking is laid on the card, and put in press. The pressing of the die cuts off the edges, adheres the stocking part, and the remainder is removed. The edge of the die on the outside forms a depression around the edge of the stocking at the time of embossing. Q. Was it done at the same time with the cutting out of the black representation of a stocking? A. It was done with the first impression, and redone with the second. Q. What was the purpose of the first impression? A. To press down the cardboard so that, when the second impression is done, that the black paper will bend over such impression, and cover the edges of the same, thereby inserting the edges of the paper into the board; preventing same from being injured easily on the edges or removed."

In all this there is no indication of a process of preserving the surface layer of the card from cracking or tearing by cutting such surface layer through on the outlines of the letters and figures, and

thereafter, by means of embossing dies, elevating so much of such surface layer as is included within the cuts, leaving the rest of the surface layer in situ. So far as appears from the testimony of this last witness, the process employed cut the stocking entirely out, and pasted the cut-out stocking to the card after such card had been embossed by the "first impression"; the rest of the sheet of paper out of which the stocking was cut being entirely removed, and never at any time properly within the description "upper layer or surface of the card." The testimony is insufficient to establish infringement of the process of the first patent in suit.

The second patent, No. 389,589, dated August 28, 1888, is for an improvement in the art of—

"Ornamenting cardboard with letters or designs, or both, for forming show, gift, or sign cards; and the invention consists in cutting the ornament in a die, and at the same time applying it to the surface of the main card."

The claim is for:

"The method herein described of ornamenting cards in relief, which consists in placing a sheet of ornamental paper, coated with adhesive material, in a die having raised letters or ornaments, with sharp and raised cutting edges, then placing the sheet to be ornamented upon the coated surface of the ornamental paper, and subjecting both to a heavy pressure; thus cutting and sticking the latter to the sheet all at one and the same operation."

The patentee invented no new machine; he merely used the old instrumentalities, so supplemented and directed by manual operations as to reach the result aimed at; and it is only the method or process of overlaying described in the patent which the patent covers. It was old to cut letters out of paper of one color, and paste them on cardboard surfaced with paper of a different color. It was old to cover the paper with adhesive material before the letters were cut out. It was old to affix the cut-out letters by pressure. It was old to cut out letters by means of sharp-edged dies pressed down upon the paper. It was old to use dies in combination with a press. The only novel feature which the patentee claims to have introduced consists in so arranging the various operations that the same movement of the die cuts the letter out, and presses it upon the surface where it is to be affixed. It would seem not to require the exercise of any inventive faculty to devise such a process; and when it appears that a similar synchronizing of movement and function was well known in the art of inlaying wood (Chinnock's patent, No. 133,-697, December 10, 1872), and of cutting labels out of printed or lithographed sheets and affixing them to the ends of bobbins (English patent to Paterson, No. 42, of 1871), it is difficult to find in the process described by the patentee invention sufficient to sustain a patent. Decree for defendant on both patents.