### ROLLMAN MFG. CO. v. UNIVERSAL HARDWARE WORKS.

(Circuit Court of Appeals, Third Circuit. December 14, 1916.)

#### No. 2107.

1. PATENTS ⬅321—ORDER OF COURT—RESTRAINING MISUSE OF DECREE.

A court of equity has power by an order to restrain the complainant in an infringement suit from making unfair use of information obtained from defendant's books, produced by order of the court on an accounting by sending circulars to defendant's customers in effect misrepresenting the scope of the decree and endeavoring by veiled threats of suit to divert their business from defendant to itself.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 588, 589; Dec. Dig. ⬅321.]

2. EQUITY ⬅66—PRINCIPLES.

The maxim that he who seeks equity must do equity is a duty which makes one who gets into a court of equity continue to do equity while he is litigating.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 188–190; Dec. Dig. ⬅66.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit in equity by the Rollman Manufacturing Company against the Universal Hardware Works. From an order, complainant appeals. Affirmed.

Archibald Cox, of New York City, for appellant.

William R. Davis, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the Rollman Manufacturing Company filed a bill against the Universal Hardware Works, charging infringement of a patent. On final hearing, the court below, in an opinion reported at 229 Fed. 579, held certain claims of plaintiff's patent infringed by one of the several cherry seeders made by defendant, and entered a decree for accounting. During such ac-

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

counting an order was made on defendant to produce its books, and by the access thus had, plaintiff obtained the names of the defendant's customers who had bought infringing machines, as well as of those who, it is alleged by defendant, had bought noninfringing ones. Later the attention of the court was called to a letter sent by plaintiff to all defendant's customers, which defendant alleged was unfair, misleading, and oppressive, in that, while purporting to give information to such customers as to the decree of the court, it did not do so fairly, in that, instead of stating the court had decreed infringement of but one of defendant's cherry seeders, it led the customers to believe that all of defendant's machines had been enjoined. Thereupon defendant applied to the court below for relief, which, on hearing, found:

"That the terms of the circular letters sent out bear the inference that the interlocutory decree declared infringement against any or all cherry seeders manufactured by the defendant, and that the plaintiff was entitled under that decree to recover from the defendant's customers profits made on sales of any or all cherry seeders purchased from it."

It further found:

"The letters contain no false representation of the scope of the decree, but undoubtedly suppressed information as to its effect and limits. In that respect the plaintiff must be held to have made an improper and unlawful use of the decree, which prima facie would entitle the defendant to maintain a suit to protect it from injury to its trade."

Holding it had power to grant relief in the premises, the court entered an order forbidding the plaintiff—

"during the pendency of this suit from making representations to the defendant's customers as to the interlocutory decree and the orders of this court, without stating the limits and effect of the decree and orders, and without definitely informing the defendant's customers of the character of infringement adjudged."

On entry of such order this appeal was taken.

Assuming for present purposes this was a final decree in equity, from which an appeal lies, we are clear the court, not only had the power to make the order, but that it properly exercised such power in doing so. The proceeding was in equity and was pending. The drastic power of the court had been exercised to compel defendant to disclose the names of all its customers as an aid to the court in decreeing a final accounting for the infringing seeders sold to certain customers. This disclosure of customers was ordered at the plaintiff's instance. Having been produced for plaintiff's benefit, it goes without saying plaintiff was under peculiar obligations not to use information, so accorded it by the court's power, in a way to wrong defendant. But this, the court below found, and we concur in that finding, is just what the plaintiff did.

This disingenuous letter subtly left to be inferred by the defendant's customers as facts and conclusions that which the writer carefully abstained from so stating. There is no question the effect such a letter left on the ordinary business man's mind. Its opening sentence, "We extend to you the olive branch, provided you in return," etc., in effect, and in connection with other parts of the letter, left the impression that

plaintiff had a claim for infringement against the customer, which plaintiff was willing to compromise. And its clever antecedent recital of a patent litigation, without saying just what it was and what it had decided—that "we are now proceeding with the accounting, and so far have found that shipments of cherry seeders were made to you on dates stated on the enclosed card"; that "in order that we may complete our claims against the infringing manufacturer, kindly send us original invoices of all shipments of cherry seeders made to you"—was such a groundwork as to lodge, by the statement following: "You understand, of course, that according to the decision of the court sustaining our patent we have a right to recover from you any profits you may have made on infringing cherry seeders"—the impression in the mind of every customer of defendant that plaintiff had a claim of infringement against him, which it was willing to compromise and adjust. And the lodgment in the mind of the customer that he was liable to a claim of infringement was made the basis of a proposed settlement, whereby defendant's customer was to be acquired by the plaintiff as its customer, viz.:

"If you send us the invoices of all cherry seeders shipped to you, * * * we will agree to release you from any liability to us for infringement, provided you will hereafter buy and sell our cherry seeders to the exclusion of any infringing cherry seeders that may be made by the New Standard Hardware Works, Mt. Joy, Pa., their successors and assigns."

[2] Under the facts disclosed, and others to which reference might be made, we think the conduct of this plaintiff litigant was such as to call for the exercise of that broad power of control which a court of equity has, namely, to see that he who seeks equity must do equity; for that maxim not only means that the obligation to do equity is a duty which enables one to get into a court of equity, but makes him continue to do equity while he is litigating.

Without discussing the authority of the court below to make the order it did—a power which is here challenged—we may say that an examination of the authorities which are collected in Asbestos Co. v. Johns-Manville Co. (C. C.) 189 Fed. 611, afford no ground for denying to a court of equity the power absolutely essential to its existence, namely, to prevent its decrees from being made the means of working injustice. When the plaintiff sought the relief of a court of equity, it bound itself to follow equity, and the decree below kept it from departing from that course.

Affirming as we do the decree of the court below, this appeal will be dismissed, at appellant's cost, but with the suggestion to both litigants in this needlessly acrimonious litigation, to which acrimony both have contributed, that before either of them do any further circularizing of the decree of this court, or the court below, they should do so under the supervision of that court in which they are litigants with certain equitable obligations.