## AMERICAN BALL CO. v. FEDERAL CARTRIDGE CORPORATION et al.

### No. 9809.

Circuit Court of Appeals, Eighth Circuit.
April 12, 1934.

Rehearing Denied May 19, 1934.

Frank A. Whiteley, of Minneapolis, Minn., for appellant.

Maurice M. Moore, of Minneapolis, Minn. (Paul, Paul & Moore, of Minneapolis, Minn., on the brief), for appellees.

Before STONE and SANBORN, Circuit Judges, and WYMAN, District Judge.

STONE, Circuit Judge.

Appellant brought an action against appellees for infringement of three patents covering improvements in ball forming machines—the main purpose of said machines being formation of steel shot for use in air rifles. A few days after this action was filed, appellant sent to various persons, some of whom were purchasers of shot from appellees, the letter following:

"Gentlemen:

"For your protection we beg to advise that we have filed suit in the United States District Court against Federal Cartridge Corporation, of Minneapolis, and Anoka, Minnesota, charging it with infringement of three of our patents through construction and use of machines and the manufacture of steel shot for air rifles thereby.

"We have asked for an injunction against such infringement and against the sale of steel air rifle shot manufactured by infringing machines.

"It is our intention to protect fully our patent rights under which we make the high quality steel air rifle shot sold under the 'Bull's Eye' Brand."

Shortly afterwards, appellees filed a "motion to dismiss and for equitable relief by injunction and order" wherein they set out that the patents involved were on shot-making machines and not on shot made thereby; that they had neither sold nor intended to sell any such machines; that they were making shot with machines constructed in accordance with other patents which had expired; that the above letters were sent only to purchasers of shot from them; that such sending was in bad faith since appellant knew it had no right to sue such purchasers for infringement; that customers of appellees had canceled orders or requested protection by appellees from infringement suits by appellant. The motion prayed dismissal of the complaint because of this alleged inequitable conduct, enjoining of further sending of such letters pending the patent litigation, and mailing of such an injunction order, by the court clerk, to persons to whom such letters had been sent. The motion was tried upon affidavits filed by the respective parties. The court entered an order enjoining appellant "during the pendency of this action and until further order of this court" from sending out such letters and required counsel for appellant to mail a copy of the order to all to whom the letters had been sent. The order contained recitals that it was not determinative of any matter of controversy in the infringement suit and a declaration that purchasers of shot were not liable "for infringement of plaintiff's patents referred to in said letter." Thereafter, the provision of the order requiring mailing of copies thereof by counsel for appellant was superseded on terms. This appeal is from the above injunction order.

The contentions of appellant are stated in the brief as follows:

"1. The letter states nothing but the truth, and under the fundamental principle of law that no one can be chargeable with wrong from uttering the truth, the plaintiff had a right to advise any one in the world of the pendency of the litigation.

"2. The letter was sent to plaintiff's own customers, and to nobody but plaintiff's customers, and plaintiff had a right to advise its customers that the defendants were seeking to take away plaintiff's business in the sale of a product manufactured upon infringing machines.

"3. The letter does not threaten its recipients with suit or litigation, and cannot fairly be considered to imply any such threat, but merely advises that plaintiff charges defendants with making their steel shot upon infringing machines, which is true.

"4. The evidence shows that defendants were undertaking a deliberate and calculated attack upon plaintiff's business, seeking to divert to defendants, plaintiff's customers, by means of unfair competition methods, and plaintiff had a right in good faith to notify its customers that it charged the defendants with manufacturing defendants' steel air rifle

shot upon machines which infringed the plaintiff's patents.

"5. The evidence submitted on behalf of defendants is insufficient to show that defendants suffered any damage because of plaintiff's letter.

"6. Defendants had no right to ask for an injunction in the absence of a counterclaim asserting such right and praying affirmative relief."

### The Letter.

■ The essence of contentions 1 to 4, inclusive, is that appellant had a right to advise any one of the pendency of the patent litigation and to advise its own customers (whom defendants were seeking to win) that defendants' shot were made by infringing machines; that the letter did no more than truthfully do this without any threat of litigation against the recipients because of handling defendants' shot, claimed to be made on the infringing machines. If all of the elements in the just preceding statement of appellant's position are true, it acted within its rights in sending these letters. This requires examination of the letters. They were addressed solely to wholesale purchasers of shot and not to purchasers of shot making machines. Admittedly, the patents did not cover shot—the product of the machines—but only the machines. The evidence establishes that appellant had a monopoly in the sale of steel air gun shot until appellees entered the field about two months before the infringement suit was filed and, also, that appellees had made inroads upon and were threatening further loss of customers to appellant by cutting prices below the manufacturing cost of appellant. This situation induced the letters. Obviously, they were intended to influence the action of the recipients to the end that they would not buy shot from appellees but would continue to buy from appellant. Such was the sole purpose of the letters. This purpose is in no wise reprehensible. Our concern is with the method of accomplishment.

Undoubtedly, appellant had the right to protect itself against loss through violation of what it honestly regarded as its patent rights. Those rights, as to appellees' activity, were undetermined but appellant was not obliged to await the outcome of that litigation before he could protect himself from the losses occurring in the meantime. The limitation upon what he could do is that he must act honestly and reasonably, that is, bona fide. Virtue v. Creamery Package Mfg. Co., 179 F. 115, this court, affirmed 227 U. S. 8, 33 S. Ct. 202, 57 L. Ed. 393; Art Metal Works v. Abraham & Straus, 62 F.(2d) 79 (C. C. A. 2); Oil Conservation Eng. Co. v. Brooks Eng. Co., 52 F.(2d) 783 (C. C. A. 6); Robbins v. Ira M. Petersime & Son, 51 F.(2d) 174 (C. C. A. 10), certiorari denied 284 U. S. 680, 52 S. Ct. 197, 76 L. Ed. 574; Alliance Securities Co. v. De Vilbiss Mfg. Co., 41 F.(2d) 668 (C. C. A. 6); Maytag Co. v. Meadows Mfg. Co., 35 F.(2d) 403 (C. C. A. 7), certiorari denied 281 U. S. 737, 50 S. Ct. 250, 74 L. Ed. 1151; Panay Horizontal Show Jar. Co. v. Aridor Co., 292 F. 858 (C. C. A. 7); Gerosa v. Apco Mfg. Co., 299 F. 19 (C. C. A. 1); Rollman Mfg. Co. v. Universal Hardware Works, 238 F. 568 (C. C. A. 3); Clip Bar Mfg. Co. v. Steel Protected Concrete Co., 213 F. 223 (C. C. A. 3); Racine Paper Goods Co. v. Dittgen, 171 F. 631 (C. C. A. 7); Adriance, Platt & Co. v. National Harrow Co., 121 F. 827 (C. C. A. 2); A. B. Farquhar Co. v. National Harrow Co., 102 F. 714, 49 L. R. A. 755 (C. C. A. 3); Celotex Co. v. Insulite Co., 39 F.(2d) 213 (D. C. Minn., Judge Sanborn); and see Flynn & Emrich Co. v. Federal Trade Comm., 52 F.(2d) 836 (C. C. A. 4) (cease and desist order) and McIlhenny Co. v. Gaidry, 253 F. 613, 622 (C. C. A. 5) (trademark).

■ It so happens that the above rule has been announced almost solely in cases where the communications were addressed to those who would be liable to respond as infringers if the patentee should succeed in establishing his rights as he honestly conceived them to be. In such situation, the law recognizes that the infringements by purchasers or users may be innocent, the injustice in punishing such unintentional invasions of the rights of the patentee and the possibility of avoiding litigation. Therefore, the statute (35 USCA § 49) requires notice, generally by marking or specifically, before damages can be recovered for infringement. Hence, it is a commendable action for the patentee, in good faith, to specifically warn those whom he honestly deems to be infringers. Virtue v. Creamery Package Mfg. Co., 179 F. 115, 120, this court; Oil Conservation Eng. Co. v. Brooks Eng. Co., 52 F.(2d) 783, 785, 786 (C. C. A. 6); Alliance Securities Co. v. De Vilbiss Mfg. Co., 41 F.(2d) 668, 670, 671 (C. C. A. 6); Racine Paper Goods Co. v. Dittgen, 171 F. 631, 633 (C. C. A. 7); Kelley v. Ypsilanti Dress-Stay Mfg. Co., 44 F. 19, 23, 10 L. R. A. 686 (C. C. Mich.).

We are faced with the different situation where those notified by the patentee could not be liable as infringers. Appellant makes

half-hearted argument that they might be liable as contributory infringers but that clearly is not so since the patents are confined to the shot making machines with no claim to the product (the shot) and the only connection of the recipients of the letters is that they were purchasers of shot. Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235; Welsbach Light Co. v. Union Incandescent Light Co., 101 F. 131 (C. C. A. 2); Barton v. Nevada Consol. Copper Co. (D. C.) 36 F. 2d) 85; Kryiak v. Owens Bottle Co. (D. C.) 25 F.(2d) 358; American Graphophone Co. v. Gimbel Bros. (D. C.) 234 F. 361; National Phonograph Co. v. Lambert (C. C.) 125 F. 388; Schwartz v. Housman (C. C.) 88 F. 519; Durand v. Green (C. C.) 60 F. 392; Goodyear v. Central R. Co. of New Jersey, Fed. Cas. No. 5563; Anonymous, Fed. Cas. No. 477; Boyd v. Brown, Fed. Cas. No. 1747. Although this different situation is a very important element or consideration in the application of the rule, yet we see no reason why the above rule as to notice to infringers is not applicable. While the purchasers of and dealers in an unpatented product of an infringing machine or process may be under no legal duty nor legal liability to the patentee, yet there may well be ethical or business considerations which would influence their conduct if they knew that a patentee in good faith believed the source of their supplies to be an infringement and that he intended to maintain his rights and possibly cut off such source. So long as the patentee acts fairly and honestly in notifying such purchasers of the actual situation as he honestly conceives it to be, a court of equity should not intervene until the verity of his position has been judicially passed upon. It may well be that if the patentee should fail to establish his rights as claimed by him that he might be subject to an action for damages (because of such false, though honestly believed, statements) on the part of the one mistakenly prosecuted for infringement and might, after his accusation of infringement has been judicially determined to be unfounded, be enjoined from further notices, yet so long as he honestly believes his undetermined rights are being invaded there is no reason why he should not be free from judicial prevention in a fair statement of his honestly held position and of any relation thereto of the recipient of such statement in a bona fide effort to protect his position.

▮ In applying this rule to this letter and having in mind the character of the recipients and the situation which it was designed to affect, we have no difficulty in determining that appellant has, *as applied to these recipients and their situation,* not made a fair statement of his position. The statement must be judged from the natural and normal viewpoint of the recipient as to what the letter revealed the position of the patentee to be. We think it clear that any dealer in such shot receiving this letter would naturally conclude therefrom that appellant intended to proceed or might proceed against him for sale by him of the shot purchased from appellee company if the patentee were successful in its litigation against appellees. At the very least, he would be left in doubt as to such being the intention of appellant. In either view, he would be faced with an actual or a possible threat of litigation arising from handling the shot made by appellees. These purchasers could be under no legal liability to appellant for selling shot bought from appellees even if appellant fully succeeded in its infringement suit. To place them under any justified apprehension of litigation was going much beyond what appellant was entitled to go in protection of its rights. Appellant would have been entitled to inform these recipients that it had filed suit against appellees and expected to prevent the sale of shot by them and that, if this happened, the dealer would be deprived of this source of supply and might be embarrassed thereby. That was the actual situation and all of it. That situation was easy to understand and easy to state. It would have left the recipient uninfluenced by anything except the actuality and his own free determination of his own interests or desires in that connection. Instead of taking this easy, open course, appellant carefully so worded the letter that it would naturally carry the further thought or inference of threatened or possible litigation. Thus the question aroused in the mind of the recipient by the letter was not whether it was advisable to deal at a lower price with one who shortly might disappear as a source of supply, but it was whether it was advisable to deal at a lower price with one who shortly might disappear as a source of supply and in addition run the risk of the expenses of litigation because of such dealing. The difference is clearly vital.

## The Injury.

▮ The fifth contention of appellant is that the evidence was insufficient to show damage to appellees from the letter. The evidence amply shows that the recipients understood

the letter as carrying a threat of litigation to them. Several of them, who were customers of appellees, demanded that appellee company assure them protection from such litigation and one of them canceled an order "inasmuch as we do not wish to be embarrassed."

## Injunction.

The sixth contention of appellant is that an injunction should not have been granted upon motion and affidavits in the absence of a counterclaim or an original bill. Also, appellant argues that the injunction should have been denied because equity will not enjoin the publication of a libel in the absence of acts of conspiracy and that here there was not even a libel.

Appellant proceeded with the hearing on this motion without objection to the form, manner, or time of presentation. We can see no reason why the court could not accord this relief on motion and affidavits. While a portion of the prayer sought dismissal of the bill of complaint because of this alleged inequitable conduct, yet the prayer also sought, obviously in the alternative, an injunction pendente lite. The latter relief was clearly analogous to preserving the status quo of the parties during the litigation. What appellant was doing was directly related to the subject of litigation. It was claimed to be injuriously affecting appellees' business during the litigation. It was claimed that it was being wrongfully done. If relief were justified, it must be prompt to be effective. The matter passed upon by the court was not decisive of any merits involved in the main controversy. While other forms of pleading might have been used, this form was suited to the exigency and abundantly protected the rights of all parties. We see nothing substantial in this contention.

As to the use of injunctive relief, it need only be said that such jurisdiction in precisely this character of question has been repeatedly recognized and exercised. Art Metal Works v. Abraham & Straus, 62 F.(2d) 79, 80 (C. C. A. 2); Oil Conservation Eng. Co. v. Brooks Eng. Co., 52 F.(2d) 783, 785, 786 (C. C. A. 6); Racine Paper Goods Co. v. Dittgen, 171 F. 631 (C. C. A. 7); Adriance, Platt & Co. v. National Harrow Co., 121 F. 827 (C. C. A. 2); A. B. Farquhar Co. v. National Harrow Co., 102 F. 714, 49 L. R. A. 755 (C. C. A. 3), and see [case of unfair competition] Maytag Co. v. Meadows Mfg. Co., 35 F.(2d) 403, 408 (C. C. A. 7).

The decree was right and is affirmed.