**SURGICAL SUPPLY SERVICE, INC.**

v.

**Sol H. ADLER, Individually and trading as Adler Supply Co.**

**Civ. A. No. 30109.**

United States District Court
E. D. Pennsylvania.
April 18, 1962.

Charles Polis, Philadelphia, Pa., for plaintiff.

Louis Necho and Sol Henry Kitei, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

### I. History of the Case

This action is brought under 28 U.S.C.A. § 1338(b) wherein injunctive relief against alleged copyright infringement and unfair competition is sought. Plaintiff and defendant are the only Philadelphia business concerns specializing in the chiropody supply business. In 1945, plaintiff's predecessor created a trade price list which plaintiff, as successor in interest, has kept up to date and has copyrighted. In 1954, defendant placed on the market a price list copied largely from plaintiff's price list. Plaintiff requested that defendant desist and this request was complied with, but only for a short period of time.

Plaintiff changed the color of his price list and defendant thereupon printed his price list on identical color paper and used the same color ink. Plaintiff now claims irreparable harm and seeks injunctive relief.

A Motion For Preliminary Injunction (Document No. 6) was filed on January 16, 1962. During the hearing on the Motion for Preliminary Injunction on January 19, 1962, both counsel agreed that the testimony taken should be considered as taken on the final hearing and trial (N.T. 77–78), which hearing and trial was resumed and completed on February 28, 1962.[1]

1. The resumed trial date of February 9, 1962, referred to at N. T. 79–80, was postponed until February 28, 1962 due to illness of counsel.

## II. Findings of Fact

1. Plaintiff is Surgical Supply Service, Inc., a Pennsylvania corporation which succeeded to all the rights of Meyer Greenfield, trading as Surgical Supply Service, hereinafter referred to as predecessor plaintiff.

2. Defendant is Sol H. Adler, who trades as Adler Surgical Supply Co. at 1416 South Broad Street, Philadelphia, Pennsylvania, and Mt. Ephraim, New Jersey.

3. Both plaintiff and defendant are at this time the only Philadelphia concerns specializing in the chiropody supply business, which is a narrow field limited to the chiropodists in the "Delaware Valley" area.

4. Sometime in 1945, predecessor plaintiff created and wrote a combination trade catalogue, price list and order blank (hereinafter referred to as the "price list").[2] Since that time the price list has been published monthly and widely circulated to the trade.

5. From time to time, the price list was reissued and brought up to date. However, its basic characteristics were always retained, viz.: (a) combination catalogue, price list and order blank; (b) distinctive typography; (c) use of squares for making check marks in ordering; (d) comprehensive listing of items under classified headings; (e) distinctive layout; and (f) miscellaneous other features, such as "check and return," and size.

6. This price list represents a valuable property right and has through the years been published at considerable expense. As of this date, no other known chiropody supply concern in the United States has a price list even remotely resembling this price list.

7. Between 1945 and 1961, plaintiff and its predecessor in interest complied in some, but not in all, respects with the Copyright Act, 17 U.S.C.A. §§ 5, 10, 20 and 105, as amended, and secured the exclusive rights and privileges in and to the copyright of the price list, and received from the Register of Copyrights a Certificate of Registration, dated and identified as follows:

| | | | | |
|---|---|---|---|---|
| May 12, 1947 | Class "K" | No. | 12515 | (plaintiff's exhibit 28) |
| June 28, 1948 | Class "K" | No. | 24547 | (plaintiff's exhibit 29) |
| Sept. 14, 1959 | Class "K" | No. | 145710 | (plaintiff's exhibit 30) |

8. Since 1945, the price list has been regularly published by plaintiff and its predecessor in interest, but not in strict conformity with the provisions of the Copyright Act, 17 U.S.C.A. §§ 20 & 105, as amended.

9. Since 1945, plaintiff and its predecessor in interest have been and still are the sole proprietors of all right, title and interest in and to the above copyright.

10. In or about February 1954, defendant, who then traded as Gross-Adler Co., published and placed upon the market a combination catalogue, price list and order blank which was copied largely from the price list of plaintiff's predecessor in interest. See P–22 and P–23.

11. Plaintiff's predecessor in interest thereupon objected to the defendant's deceptively similar manner of advertising, with the result that defendant agreed to, and did, desist in using such advertising.

12. In or about August 1960, defendant again resumed this same manner of deceptive advertising.

13. Defendant was notified of plaintiff's objection to this manner of advertising, but continued nevertheless.

---

2. Plaintiff, in paragraph 5 of its Complaint, refers to this advertisement as a "combination trade catalogue, price list and order blank," and in its September 1961 (D–2) sheet refers to it as an honest "price list."

14. Plaintiff, in an effort to avoid the confusion which the defendant's deceptively similar price list was creating, recently printed its price list on entirely different colored paper with different colored (red) ink. Defendant thereupon printed his price list on identical colored paper and in the same color ink (plaintiff's Exhibits E and F, attached to Complaint).

15. Because the field of chiropody is so limited and the similarity between the two price lists is so great, these lists can easily be confused by chiropodists when ordering supplies.

16. The gross sales of plaintiff's business were over $188,000. in 1960 and dropped to less than $175,000. in 1961.

17. Over the past few years, plaintiff's profit margin has been about 25.5%. Business of a general type, similar to plaintiff's averaged a profit margin of about 27.23%.

18. The sole method of soliciting customers and sales employed by plaintiff is the mailing of their price list, which has been developed and consistently used by plaintiff (N.T. 12–16, 47–49). If this method of making sales by plaintiff is denied to it, the above profit of 25% will be lost. Plaintiff has spent in excess of $15,000. in developing and printing these price lists.

19. As a result of factual findings in 17 and 18, the trial judge finds there is more than $10,000. involved in this controversy.

All requests for Findings of Fact inconsistent with the above are rejected.

### III. Discussion

The principal issues are:

A. Is this price list a copyrightable subject within Article 1, Section 8, Clause 8, of the United States Constitution?

B. Does the District Court have jurisdiction under 28 U.S.C.A. § 1332 to try a claim of unfair competition where no valid copyright exists?

C. Is defendant guilty of unfair competition?

D. Was plaintiff estopped from asserting a claim for unfair competition because of the doctrine of unclean hands?

E. Does defendant have a valid counterclaim for injunctive relief?

A. The exclusive right to employ a particular method of advertising cannot be acquired under the copyright statute and, therefore, is not the proper subject matter of a valid copyright.

A copyright is a limited monopoly created by federal statute passed in the exercise of the power vested in Congress by Article 1, Section 8, Clause 8, which provides that "The Congress shall have power: To promote the Progress of Science and useful Arts by securing for limited Times to Authors * * * the exclusive Right to their respective Writings * * *."

As stated in "Law of Copyright and Literary Property," by Mr. Horace Ball, at page 44:

"The primary object of conferring the monopoly upon a special class of individuals in direct contravention of the general anti-monopoly policy is to bestow upon the public the cultural benefits derived from the labor, skill, talents and genius of authors. The copyright is the equivalent which the public gives to the author in return for these benefits. The secondary purpose is to encourage authors by securing to them for a limited time the exclusive right to publish, vend and otherwise exploit the productions which are the results of their skill, thought and genius; that is, the exclusive right to multiply copies for profit; for in no other way could they receive the full financial benefits of their work. The third purpose is to give notice to the public that the author or other owner has not abandoned the property in his literary or artistic work or dedicated it to the public. The act contemplates that the public shall have notice, by a correct official registration, of the identity of the

author or proprietor entitled to enjoy such monopoly as against the public. These purposes are necessarily implied in the policy of promoting the 'progress of science and useful arts,' as stated in the copyright clause of the Constitution, and contemplate the extension and increasing adaptation of the copyright laws to the uses of society in accordance with changing conditions."

If plaintiff's price list is copyrightable, it must fall within some classification, as provided in 17 U.S.C.A. § 5. The pertinent part of § 5 states:

"The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs:

"(a) Books, including composite and cyclopedic works, directories, gazetteers, and other compilations.

"(b) Periodicals, including newspapers.

\* \* \* \* \* \*

"(k) Prints and pictorial illustrations including prints or labels used for articles of merchandise."

Plaintiff claims it falls within either 5(a) or 5(k).[3]

It is noted that the earlier cases held intellectual productions which are designed and created to refresh the physical, mental or moral powers by amusing, entertaining or instructing, or by appealing directly to the aesthetic taste, as well as those subjects which directly serve to inculcate mental discipline or add to the store of knowledge, were all within the range of "science and useful arts."[4]

A review of all the cases indicates the following have been held to be registerable material:—books, annotated statutes, cartoons, catalogues, directories, compilations, pamphlets, law reports, translations, dramatic compositions, paintings, drawings, chromos, peri-

odicals, newspapers (not news, per se), phonograph records, photographs, prints, pictorial illustrations, works of art, models and designs.

This long list illustrates the great liberality in construing the copyright statutes enacted pursuant to the Constitution.

As stated by the Supreme Court in Bobbs-Merrill Co. v. Straus, (1908) 210 U.S. 339, at 346, 28 S.Ct. 722, at 724, 52 L.Ed. 1086:

"The copyright statutes ought to be reasonably construed with a view to effecting the purposes intended by Congress. They ought not to be unduly extended by judicial construction to include privileges not intended to be conferred, nor so narrowly construed as to deprive those entitled to their benefit of the rights Congress intended to grant."

On the other hand, under their particular facts, advertising, books, dramatic composition, drawings, historical facts, ideas, law reports, laws maps, names, titles, news, public domain reports, plans and systems (i. e., bookkeeping), and statutes have been held not to be registerable material within the purview of the copyright laws.

The trial judge recognizes that catalogues and directories are copyrightable. Leon v. Pacific Telephone and Telegraph Co., 91 F.2d 484 (9th Cir.1937); Da Prato Statuary Co. v. Giuliani Statuary Co., 189 F. 90 (C.C.D.Minn.1911).

As a general proposition, the rule as stated in Ansehl v. Puritan Pharmaceutical Co., 61 F.2d 131 (8th Cir.1932), is still a correct statement of the law. It was held by the court at page 138:

"The defendants might appropriate the ideas and express them in their own pictures and in their own language, but they could not appropriate the plaintiff's advertisement by copying his arrangement of ma-

---

3. While plaintiff, in its Complaint, alleges that the price list was registered under 17 U.S.C.A. § 5(k), its brief emphasizes and relies on 17 U.S.C.A. § 5(a).

4. Horace Ball, "Law of Copyright and Literary Property" (1944), page 67.

terial, his illustrations and language, and thereby create substantially the same composition in substantially the same manner, without subjecting themselves to liability for infringement."

However, this case still requires some literary or artistic merit in order to create a copyrightable subject.

In the case at bar, there is a mere advertisement consisting of a bare list of articles and prices. The trial judge cannot, under any test of literary or artistic merit, find such advertisement to be the proper subject of a valid copyright. It clearly lacks the legal minimum of originality necessary for a copyright.

The catalogues or other advertisements held to be copyrightable had some originality or quasi-artistic character. Although it would appear very little originality is required to render this proposed price list the proper subject of a copyright, a simple price list is not an original work in the 1950's or 1960's. "Original," as defined in Webster's Dictionary, means "of or pertaining to the origin or beginning; first in order or existence primitive; pristine" or "not copied, imitated, or reproduced; underived; inventive."

Plaintiff has not shown how a tradesman's price list inures to the benefit of the world, in what sense it is creative, and to what extent it can be accused of belonging to the useful arts. An investigation of the cases does not reveal any opinion holding that the purpose of the copyright law is to protect a price list, which is of no benefit to mankind and which not only is devoid of genius but lacks any real creativity or literary merit.

It was stated as a general rule in Chamberlin v. Uris Sales Corporation, 150 F.2d 512 (2 Cir.1945), that the constitutional power to grant monopolies to authors whose works promote the progress of science and the useful arts, does not authorize such a monopoly grant to one whose product lacks all ingenuity. The price list before the trial judge to-day only promotes or attempts to promote the sale of plaintiff's merchandise in the commercial world.

The cases are uniform and settled in holding that a work, in order to be copyrightable, must (a) represent the author's own skill, labor and judgment, and (b) it must be meritorious in that it must be connected with the fine arts. Plaintiff's price list of goods, even though alphabetically arranged, is described by terminology which is in the public domain. Plaintiff's price list does not represent such genius and industry as to fall within the copyright statutes.

Therefore, the trial judge concludes that a mere price list containing only a list of articles, not original as to the alleged copyright applicant, described by terms used only by the manufacturers of the articles, and intended only for the solicitation of sales, is not within the intendment of the copyright provision of Article 1, Section 8, paragraph 8, of the United States Constitution, as codified in 17 U.S.C.A. § 5.

Since there is no valid copyright, an opinion is not expressed as to any alleged false marking of copyright or failure to provide proper notice of copyright on the part of the plaintiff, as provided in 17 U.S.C.A. §§ 20 & 105.

B. The Federal Court has jurisdiction of plaintiff's unfair competition claim.

The trial judge finds diversity exists and there is more than $10,000. involved. Under these circumstances, the court has jurisdiction of the case under 28 U.S.C.A. § 1332.

C. Unfair competition exists where a person copies extracts and quotations from another's advertising price list, which the original advertiser has collected and placed in his price list, notwithstanding the same matter may be found in common and public sources which the second person, if possessed of sufficient skill, industry and judgment, could have selected for himself.

■ Unfair competition exists separate and apart from any statutory rights which the owner of a copyright possesses, and the copyright law is but a part of the broad field of action of unfair competition. House of Westmore v. Denney, 151 F.2d 261 (3rd Cir.1945).

■ This cause of action, known as unfair competition, is the means by which a person aggrieved obtains relief against unfair competitive practices of diverting established business or trade. Unfair competition is based on equitable principles and may be distinguished from infringement of a trademark or copyright in that it does not involve the violation of the exclusive right to use a word, mark, or symbol, but rather involves any violation of a right arising from the operation of an established business. House of Westmore, supra.

■ The law of Pennsylvania is clear in that trading on another's business reputation by use of deceptive selling practices or other means will be enjoined, and if the particular use in question is reasonably likely to produce confusion in the public mind, the court will restrain such unfair practices. See Morgan's Home Equip. Corp. v. Martucci, 390 Pa. 618, 136 A.2d 838 (1958).

It has been held that the public need not actually be deceived. It is sufficient that the act has a tendency to deceive. Such a tendency entitles plaintiff to relief for unfair competition. O'Connell v. National Water Co., 161 F. 545 (3rd Cir.1908); Schmick v. West Reading Broom Wks., 79 Pa.Super. 331, 339 (1922).

■ ■ Defendant contends that not only customer confusion is required but also there must be "palming off." Palming off is conduct, the natural and probable effect of which is to deceive the public so as to pass off goods of one person as and for that of another. The trial judge finds that defendant's acts and methods were clear and intentional "palming off." Customers were confused and deceived by defendant's advertising.

■ Even if there was no problem of any copyright infringement, a newcomer entering a field occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of his rival. Gamlen Chemical Co. v. Gamlen, 79 F.Supp. 622 (W.D.Pa.1948).

D. Plaintiff is not precluded from seeking injunctive relief against unfair competition by the doctrine of unclean hands.

Defendant contends:

(1) plaintiff deliberately and knowingly marked numerous copies over many years with notice of copyright 1949, 1952, 1953, and 1961, when plaintiff had not secured any copyrights for these years;

(2) plaintiff did not comply with 17 U.S.C.A. § 20 in that he failed to place a notice of copyright on some of his price lists; and

(3) plaintiff made disparaging remarks reflecting on defendant's character and integrity.

■ While the trial judge agrees with factual contentions (1) and (2), an allegation of unclean hands must be considered with reference to all legal issues raised by the facts. In view of cases such as Ansehl v. Puritan Pharmaceutical Co., 61 F.2d 131 (8th Cir.1932), and Da Prato Statutary Co. v. Giuliani Statuary Co., supra, there was no bad faith in plaintiff's claim that its material was properly copyrighted.

■ Therefore, in view of the fact that this case involves a claim for unfair competition, the trial judge finds plaintiff is not precluded from asserting his claim of unfair competition, since any possible finding of unclean hands refers only to the issue of copyright and, as concluded in section A, there was nothing that could be copyrighted.

■ ■ As to defendant's third contention, it is noted that defendant failed to pursue this argument at trial and a review of plaintiff's price lists does not

support this contention of defendant. Even if defendant had shown that plaintiff made disparaging remarks about defendant's business practices, it has long been the general rule that a patent or copyright holder may protect itself against loss through violation of what it honestly considered its patent or copyright privileges by sending letters urging customers to continue buying its products without awaiting the outcome of an infringement suit, if it acted honestly, reasonably and in good faith. See, e. g., American Ball Co. v. Federal Cartridge Corp., 70 F.2d 579, 98 A.L.R. 665 (8th Cir.1934); A. B. Farquhar Co. v. National Harrow Co., 102 F. 714 (3rd Cir. 1900).

In the most recent Third Circuit decision concerning the equitable doctrine of clean hands, Gaudiosi v. Mellon, 269 F.2d 873 (1959), Judge Kalodner stated at page 882:

" 'The doctrine [of unclean hands] is confessedly derived from the unwillingness of a court, originally and still nominally one of conscience, to give its peculiar relief to a suitor who in the very controversy has so conducted himself as to shock the moral sensibilities of the judge. * * * ' "

Judge Kalodner concludes at page 879:

"On review of the record we are of the opinion that it amply sustains the District Court's fact-findings and Conclusions of Law with respect to Phillips' 'unclean hands' [with reference to plaintiff's attempts to intimidate stockholders] * * *."

It is to be noted that the misconduct which will prevent equitable relief under the clean hands doctrine must have been wilfull. However, when the wrongful act was not wilfull but was committed by the plaintiff under an honest belief as to its validity, the plaintiff is not precluded by the clean hands maxim from seeking relief in equity. See Frazier v. Mansfield, 305 Pa. 359, 157 A. 798 (1931); Hartman v. Cohn, 350 Pa. 41, 38 A.2d 22 (1944).

In the instant case, the trial judge does not find this plaintiff's hands to be unclean under this legal principle because it believed in good faith that its price list was subject to copyright, and there has been no showing that it had any knowledge that more such lists should have been copyrighted, even assuming defendant's contention on this point is correct.

E. Defendant's counterclaim for an injunction is rejected.

Defendant's claim that plaintiff has "conducted a campaign of harassment against Defendant and that the Complaint herein is only intended to impress customers and scare away Defendant's customers" is not supported by the record.

Defendant has not sustained his burden of showing that plaintiff harassed his customers and the trade at large by disseminating claims that defendant's catalogues infringe on any rights of plaintiff.

In view of defendant's unfair competitive practices, plaintiff acted reasonably in protecting its price lists, good will and business reputation.

IV. Conclusions of Law

The trial judge makes the following Conclusions of Law:

1. Plaintiff has no valid copyright on a mere price list.

2. The court has jurisdiction of the subject matter and of the parties under 28 U.S.C.A. § 1332.

3. Plaintiff's continued advertising has created a demand for his goods and defendant is guilty of unfair competition in taking advantage of plaintiff's advertising through his calculated and intentionally deceptive use of price lists similar to plaintiff's.

4. Plaintiff's requested Conclusions of Law Nos. 4, 5, 11 and 15 (dismissing the Counterclaim) are affirmed.

5. Plaintiff is entitled to injunctive relief.

### V.  Form of Decree

Defendant, having been found guilty of unfair competition, shall:

1.  Destroy all price lists printed since Notice of Preliminary Injunction was filed.

2.  Destroy all printing plates made for such price lists and made since service of the Complaint.

3.  File within fifteen (15) days an affidavit listing any such printed materials and plates in his possession or within his control.

Plaintiff shall submit an appropriate form of injunction.