**BECHIK PRODUCTS, Inc., Plaintiff-Appellant,**

v.

**FLEXIBLE PRODUCTS, Inc., a corporation, Defendant-Appellee,**

and

**Morris Goldstein, Max Goldstein and Leo Goldstein, d/b/a Crown Mattress Co., Defendants.**

**No. 349, Docket 23685.**

United States Court of Appeals Second Circuit.

Argued June 15, 1955.

Decided August 9, 1955.

604

Morris Kirschstein, New York City, for plaintiff-appellant.

Richard W. Blum, Mock & Blum, New York City, for defendant-appellee.

Before CLARK, MEDINA and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

Bechik Products commenced an action against Flexible Products and one of the latter's customers, Crown Mattress Company, alleging (1) infringement of its Patent No. Re. 22,807 by Flexible in making and selling patented mattress handles and (2) contributory infringement by Crown in using the handles in mattresses of its manufacture. Flexible counterclaimed for a judgment declaring the patent noninfringed and for a temporary and permanent injunction enjoining plaintiff (1) from representing that Flexible or any of its customers are infringing the patent and (2) from suing any of Flexible's customers. In advance of trial on the merits, Flexible moved for the forthwith issuance of the temporary injunction sought by its counterclaim, *pendente lite*. From the order granting this motion, this appeal is prosecuted.

The trial court found that Flexible (the appellee hereinafter referred to as the defendant) is financially responsible. That finding is not disputed by appellant. It was also found that the patent in suit is as yet unadjudicated and will expire on July 8, 1958. The findings further state that, "Plaintiff sent to mattress manufacturers and to at least one customer of defendant, Flexible Products, Inc., a notice in which plaintiff threatened to sue mattress manufacturers if they infringe U. S. Patent No. Re. 22,807." The notice, which is referred to in the above finding, was a letter written by plaintiff's lawyers to defendant's customers, which we set out in the margin.[1]

The trial court made no finding that such notices were sent in bad faith or that there was anything unfair about them. Nor was there any finding made below that defendant would suffer irreparable injury if the relief sought was withheld.

The defendant, on appeal, contends that plaintiff's bad faith in the premises is demonstrated by an insinuation, contained in the letter quoted above, that the defendant is financially irresponsible. On that point the letter states only that, " * * * in the event of financial irresponsibility of Flexible Products, Inc., we will obviously have no choice but to hold such mattress manufacturers liable, in the event of success in this protracted and costly litigation." We think it clear that the above quotation is sufficiently guarded so that a fair reading would not suggest a charge of present or future financial irresponsibility. It was no more than a fair warning to defendant's customers of what will confront them in the event that the contingency referred to should come to pass. The defendant does not contend that any other portion of the letter is subject to attack as showing appellant's bad faith or intent to harass Flexible's customers.

1. The letter states the following:

"Since our letter of February 18, 1955 we have found it necessary to file a patent infringement suit on our Patent Re. 22,807 [October, 1946], not only against Flexible Products, Inc. of Brooklyn, N. Y. but also against Crown Mattress Company, Brooklyn, who has purchased infringing mattress handle components from Flexible Products, Inc., and has, since said letter, incorporated them in its mattresses.

"We regret having been forced to include in this action a mattress manufacturer. However, because certain of the claims of this patent definitely include the mattress wall as one of the elements, our attorneys have advised us that suit against mattress manufacturers who persist infringing upon our above identified patent, in spite of these continued notices of infringement, is a practical necessity.

Futhermore, in the event of financial irresponsibility of Flexible Products, Inc., we will obviously have no choice but to hold such mattress manufacturers liable, in the event of success in this protracted and costly litigation. We sincerely hope that it will not be necessary to bring suit against other mattress manufacturers; and that if such is found to be necessary, our customers will be indulgent and understanding.

"In order to eliminate any possibility of confusion on the question as to the structure covered by Bechik Patent Re. 22,807, upon which we have brought suit against Flexible Products, Inc. and Crown Mattress Co., and the structure of Bechik Patent No. 2,105,580, which expired January 18, 1955, we have prepared and enclose herewith a sheet showing sketches of these two structures."

To us, the letter, even when appraised in the light of defendant's affidavits seems but a *bona fide* effort on the part of the plaintiff to protect what it believes to be its rights.

■ In Kaplan v. Helenhart Novelty Corp., 2 Cir., 182 F.2d 311, 314, we held that, " * * * It is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are." The owner of a patent has a right to threaten suits for infringement, provided he does so in good faith. This is not a case in which effort was made to harass or ruin a competitor's business on the basis of claimed patent rights known to be groundless. We think that the showing made was inadequate basis for enjoining the letters. Johnson Laboratories, Inc., v. Meissner Mfg. Co., 7 Cir., 98 F.2d 937; American Ball Co. v. Federal Cartridge Corp., 8 Cir., 70 F.2d 579, 98 A.L.R. 665; Sharnay Hosiery Mills, Inc., v. Sanson Hosiery Mills, Inc., D.C.E.D.Pa., 109 F. Supp. 956. The United States Supreme Court has stated the reasoning underlying this rule: "Patents would be of little value if the infringers of them could not be notified of the consequences of infringement * * *." Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 37–38, 33 S.Ct. 202, 208, 57 L.Ed. 393.

■ The injunction restraining, *pendente lite*, the bringing of additional suits against defendant's customers involves other considerations. The granting of an injunction is discretionary with the trial court. In the situation here involved, the formulation of discretion confronted the trial judge with the delicate task of balancing competing interests. The plaintiff, of course, has a statutory right to protect its monopoly by prosecuting suits against infringers. Nevertheless, the injunction granted below could be sustained if without substantial impairment of the plaintiff's rights under the paramount patent law it would operate to prevent needless litigation. This has been an historic and traditional objective of equity. As to this, it is well established that if plaintiff loses in the instant litigation the judgment will not operate as *res judicata* in a subsequent suit brought by plaintiff against another infringer, not a party to the instant action, who, like Flexible, is a manufacturer of the patented mattress handles. Mast, Foos & Co. v. Stover Manufacturing Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856; Taigman v. Desure, 2 Cir., 253 F. 364; Freeman-Sweet Co. v. Luminous Unit Co., 7 Cir., 264 F. 107; Ostby & Barton Co. v. Jungersen, D.C.D.N.J., 65 F.Supp. 652; Williams v. Hughes Tool Co., 10 Cir., 186 F.2d 278. In such an action, the principles of collateral estoppel also will be inapplicable. See Speed Products v. Tinnerman Products, 2 Cir., 222 F.2d 61, and authorities there cited.

But here the injunction does not enjoin such actions: it only prohibits the bringing of suits against customers of Flexible, other than Crown, the contributory infringer named as a co-defendant in this case. As against such customers, the plaintiff, after losing in the present suit, would be barred by the decree in this suit. General Chemical Co. v. Standard Wholesale P. & A. Works, 4 Cir., 101 F.2d 178, 181. In his opinion in this case, Judge Parker said:

"The purchaser of a manufactured product should not be barred, of course, from defending a suit brought against him by a patentee for infringement by a finding of infringement against the manufacturer, for the very good reason that he has had no opportunity to be heard with respect to infringement in the suit against the manufacturer. But the same reasoning does not apply where the facts are reversed and the case is one where the patentee, having lost in his litigation against the manufacturer, brings suit against the latter's customers. The patentee, in such case, has had his day in court with respect to the subject matter of the litigation, and non infringement has been solemnly adjudicated with respect to it. To hold that he is bound by the judgment in suits against other parties with re-

spect to the same subject matter, does him no injustice and prevents unseemly conflict of decision and useless prolonging of a controversy which has been decided against him by the courts."

Wenborne-Karpen Dryer Co. v. Dort Motor Car Co., 6 Cir., 14 F.2d 378, seems to hold to the contrary. But Judge Parker's opinion in the General Chemical case persuades us that the rule of that case is sound. We think that the decree on the merits of the instant case will be dispositive as to the plaintiff's rights against other customers if it adjudges that the plaintiff's patent is invalid or noninfringed: that a decree sustaining the patent will not be conclusive as against other customers not party to the action here.

If, however, the plaintiff here, uninhibited by injunction, should during the pendency of this action commence an infringement action against another of the defendant's customers, say in Connecticut, the defendant there, or Flexible if it intervened, could move for a stay thereof pending a decree in this action. The granting of such a motion would be discretionary with the Connecticut judge, Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200. He, in line with the reasoning in the General Chemical Co. case, supra, might well stay the Connecticut action to permit the decree in this case, if it proved to be such as to sustain the defendant's position, to be interposed there as a bar and thus obviate the need to relitigate in Connecticut the issues disposed of adversely to the plaintiff in this action. Without weighing the position of the parties on the merits, the possibility of a dispositive decree here might be deemed enough to warrant *the stay.* That being so, may not the possibility of dispositive decree here be enough to support the injunction granted in this case, restraining the *institution* of suits elsewhere?

There are perhaps other factors not involved in the *stay of actions already brought* which apply to injunctions staying *the institution* of actions. Specific-

ally, the granting of this injunction will create a change in the initial date of the statutory period in which infringements give rise to the recoverability of damages or lost profits. If the plaintiff finally succeeds in the instant action it may in subsequent suits against contributory infringers be precluded from proving damages accruing in the period of time in which most of the infringement took place. However, there was no showing below that this possibility is reasonably to be expected in this case. At most, the possibility is remote. Moreover, any damages which the plaintiff would thus be precluded from recovering from other contributory infringers in future actions are recoverable from the defendant manufacturer in this action; provided, at least, that the defendant shall be financially able to pay any award which may ultimately enter against it. Certainly the plaintiff could not succeed, even if it brought two actions, in recovering the same damages twice. However, we think that the court should not, by a stay in the institution of suits against defendant's customers, put damages for which the defendant is liable beyond the reach of recovery from the customers, without assurance that the defendant will be financially able to discharge its liability therefor.

We hold, therefore, that the injunction restraining the institution of suits against other contributors to Flexible's infringement may issue only on condition that Flexible furnish a bond conditioned on its payment to the plaintiff of any pecuniary award which may be made to it in this case. That the issuance of the injunction so conditioned is within the discretion of the court, we have no doubt. Hecht Co. v. Bowles, 321 U.S. 321, 329–330, 64 S.Ct. 587, 88 L.Ed. 754. Of course, if such an injunction shall issue the plaintiff cannot in good faith during its pendency threaten contributory infringers with suits thereby enjoined. The defendant's liability in this case, supplemented by a bond in an amount approved by the trial court, will completely obviate the need which the plaintiff might otherwise have to protection

**608**

against those contributing to the defendant's infringement.

Reversed and remanded for entry of a modified order not inconsistent with this opinion.