Owen Finlay **MACLAREN** and Miron
Charles Bell, Plaintiffs,

v.

**B–I–W GROUP INC.**, Defendant.

No. 70 Civ. 5348.

United States District Court,
S. D. New York.

July 13, 1971.

Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, for plaintiffs by Philip T. Dalsimer, Charles R. Hoffman, Gerald Levy, New York City, of counsel.

Greenman, Zimet, Haines & Goodkind, New York City, for defendant by Howard I. Rhine, Gottlieb, Rackman & Reisman, New York City, of counsel.

GURFEIN, District Judge.

In this action the plaintiffs are the inventor and exclusive American licensee of a certain folding baby stroller which folds into a "stick" under patent No. 3,390,893 issued by the United States Patent Office on July 2, 1968. They claim that the defendant has infringed the patent. The defendant denies the material allegations of the complaint and counterclaims for a declaratory judgment of patent invalidity and for unfair competition. The validity of the patent has not been previously adjudicated by any Court. The motion by the defendant now before the Court will be described below.

## BACKGROUND

The defendant is a corporation which was organized approximately one year ago with its principal place of business in Briarcliff Manor, New York. After having seen the plaintiffs' patented stroller, the defendant approached the plaintiffs for the purpose of negotiating a sublicense under the patent in suit. The negotiations fell through. The defendant sought patent counsel who, after the negotiations fell through, rendered an opinion to the defendant that the patent involved was invalid primarily because of the existence of a prior (1930) patent reference for a "TENT" "which comprises a collapsible framework" and which was not considered by the Patent Office in granting patent No. 3,390,893.

After obtaining the opinion of counsel the defendant started to market an unpatented folding stroller. The defendant's unpatented folding stroller appears to be virtually the same as the plaintiffs' patented folding stroller. That is obvious from the photographs submitted on the motion and from a demonstration of the two competing strollers by the plaintiffs' counsel at oral argument.[1] The defendant contends, and it is not denied, that its unpatented folding stroller sells at wholesale for $13.50 per unit while the plaintiffs' patented version is sold for $18 per unit.

After it came to the plaintiffs' attention that the defendant was manufacturing and selling an allegedly infringing product to retailers they commenced this action on December 7, 1970. Apparently in response the defendant on or about January 1, 1971 distributed nationally a single-spaced, two-page letter to the trade (juvenile furniture retail buyers) which is not only lengthy but is confusing and misleading. Although disclaiming any "monopoly rights" it nevertheless speaks of "conflicting patent claims" as though it did claim patent rights of its own, although it is undisputed that there is only one registered patent and that is the one owned by the plaintiffs. In early January 1971 the defendant also embarked upon an extensive national advertising campaign for the purpose of marketing its unpatented folding stroller.

Later in January 1971, after the defendant had mailed its letter to the trade and after some of the advertisements had

---

[1]. Patent counsel for defendant attempts to point out certain structural differences, but at this point in the litigation the Court is unimpressed by these "distinctions." We are reminded of Judge Hough's famous remark:

"The imitation of a thing patented by a defendant, who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think." Kurtz v. Belle Hat Lining Co., 280 F. 277, 281 (2d Cir. 1922).

appeared, the plaintiff Bell mailed letters to two of his customers, to a third retailer, and to a sales representative of the defendant, advising them of the pending lawsuit. All of these notices make the following statement: "You will surely understand that we must take whatever action we deem appropriate should we find that you are offering for sale a device that infringes U. S. Patent No. 3,390,-893." Two other letters, one dated the first week in January 1971 and the other in March 1971 were written by the plaintiffs' attorneys. One was written to a sales agent for the defendant who also leases a showroom to the defendant, the other to a retailer. These letters gave notice of the patent (enclosing a copy) and stated: " * * * We presume in the present situation that you are unaware of the presence of the patent; accordingly, you will take the necessary steps to rectify the situation and immediately cease and desist from further marketing of your stroller and infringement of the aforesaid patent." Defendant also claims that a great many retailers and some of those persons previously mentioned have been threatened orally with lawsuits on more than one occasion, and in a sealed affidavit has given a long list of their names. The plaintiffs do not deny that they have informed the trade of their ownership of the patent or that they have threatened suit.

On May 4, 1971 the plaintiffs, having discovered where at least some of the parts being used in defendant's unpatented folding stroller were being manufactured instituted an action for infringement in the Western District of New York against Genesee Plastics Company, Inc. (Genesee) of Rochester, New York.[2] The defendant concedes that Genesee and another corporation related to Genesee at the same premises in Rochester do work in connection with the manufacture and assembly of the defendant's unpatented stroller. Another company, Jefferson Leisure Products Company (Jefferson) of Annandale, Virginia, is a wholly owned subsidiary of the de-

fendant which is engaged as a sales agent for the defendant. From the papers submitted by the defendant it is unclear where else the defendant and its agents are manufacturing their unpatented stroller and whether there are any other corporations or entities with common principals also engaging in the manufacture and sale of the unpatented stroller.

## THE DEFENDANT'S MOTION

The defendant now moves for an order: (1) enjoining the plaintiffs from prosecuting the action against Genesee in the Western District of New York; (2) enjoining the plaintiffs from instituting and prosecuting additional actions for patent infringement under patent No. 3,390,893 against customers and sales representatives of the defendant and vendors of component parts to the defendant; and (3) enjoining the plaintiffs from communicating with customers and potential customers of the defendant, sales representatives of the defendant and vendors of component parts to the defendant either orally or in writing or otherwise harassing such persons in connection with patent No. 3,390,893.

### I

The defendant contends that since the instant action was instituted approximately five months before the *Genesee* action and involves the real parties in interest and the very same issues (see Coleco Industries, Inc. v. Empire Plastic Corp., 321 F.Supp. 146 (S.D.N.Y.1970)), the *Genesee* action should be stayed. It contends that an adjudication of this lawsuit favorable to the defendant will be dispositive of the *Genesee* action under the doctrine of collateral estoppel (see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)), and that it has undertaken, in any event, to defend and indemnify Genesee. It undertakes to have Genesee intervene as a defendant in the case at bar if the Western District action is stayed. The

2. Maclaren v. Genesee Plastics Company, Inc., Civ. 1971–199.

Court sees no sound reason why the Western District action should not be stayed in the interests of judicial economy and since there would be no inconvenience to any party. The New York action is not only first in time but it has proceeded well into the discovery stage. The lawyers in New York are "of counsel" in Rochester. This was the way pointed by the Supreme Court in Kerotest Mfg. Co. v. C-O-Two Co., 342 U.S. 180, 185, 72 S.Ct. 219, 96 L.Ed. 200 (1952) and again in the philosophy of the *Blonder-Tongue* case, *supra*. For these reasons and because we in no way wish to impair the ability of the plaintiffs to collect any judgment for infringement which they might ultimately obtain, the Court will order the plaintiffs to take no further steps in the Western District action upon the condition that Genesee, within fifteen days from the date of the order to be settled herein, intervenes in this action as a party defendant.

## II AND III

With respect to the application to enjoin the plaintiffs from harassing defendant's customers, sales agents and vendors, and from instituting or commencing further actions against said customers, sales agents and vendors, it is contended that the threatening and bringing of additional patent infringement suits by plaintiffs under the circumstances would serve no useful purpose other than the "unlawful purpose" of subjecting the defendant to extraordinary business pressures which are likely to prevent the defendant from pursuing and determining the important issues of this litigation. The defendant further contends that the trade is already well informed of the pendency of plaintiffs' patent claims and that the defendant's business will be destroyed if the "harassment" and threat of litigation is continued against its customers, its potential customers and suppliers.

■ With respect to the alleged "harassment" by plaintiffs against the defendant's customers, sales agents and vendors, it cannot be disputed that "the owner of a patent has a right to threaten suits for infringement, provided he does so in good faith." See Bechik Products v. Flexible Products, 225 F.2d 603, 606 (2d Cir. 1955); Kaplan v. Helenhart Novelty Corp., 182 F.2d 311 (2d Cir. 1950); Brown v. Myerberg, 314 F.Supp. 939 (S.D.N.Y.1970); Royal Die Cutting & Sealing Corp. v. Duro Pen Company, 223 F.Supp. 384 (S.D.N.Y.1963). As the Supreme Court said long ago: "Patents would be of little value if infringers of them could not be notified of the consequences of infringement." Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 37–38, 33 S.Ct. 202, 208, 57 L.Ed. 393 (1913).[3]

■ The written notices and oral contact by the plaintiffs which are complained of by the defendant occurred *after* the defendant had sent out a letter to the trade which in the Court's view was misleading and understandably objectionable to the plaintiffs. Plaintiff Bell, as any reasonable business man would have done to protect his patent, responded with the letters and the personal contacts of which complaint is made.

■ The Court finds that under these circumstances plaintiffs' responses were neither in bad faith nor excessive. It was the plaintiffs who willingly submitted the validity of their patent to the judicial process. This was before any written notices to the trade were sent. The defendant could have brought an action under the Federal Declaratory Judgment Act (28 U.S.C. Sections 2201–

---

3. The movant argues that the presumption of the validity of the patent (35 U.S.C. Sec. 282) has been overcome by showing that the prior art reference for a "tent which comprises a collapsible framework" was not a reference before the Patent Office. While that may be true at a trial, as to which we express no opinion, the issue here is not the validity of the patent *vel non* but the good faith of the patent owner in sending out notices and threatening suit.

2202) to have patent No. 3,390,893 declared invalid which it failed to do.[4] Nor is it bad faith on the part of the plaintiffs that they have, thus far, brought no suit against any of the customers or the sales representatives since they did notify them to cease and desist from infringing the patent. Indeed, some who received oral notice have terminated their relationship with the defendant, and no further action is required.

 As to the prayer to enjoin *future* actions against customers or sales agents of the defendant there has been no sufficient showing that the defendant is financially responsible for damages or loss of profits that might accrue to the plaintiffs if they are ultimately successful. In a case like this one the patentee should not be prevented from pursuing his rights against contributory infringers unless the defendant manufacturer offers convincing proof that it can make good what the patentee has lost by failing to pursue his remedy against contributory infringers. Bechik Products v. Flexible Products, *supra,* 225 F.2d at 607. The burden of proof is on the alleged infringer to show such adequate financial responsibility. American Chemical Paint Co. v. Thompson Chem. Corp., 244 F.2d 64, 67 (9th Cir. 1957). That burden has not been met here. Defendant is a fledgling company which has spent most of its initial investment on research and inventory among other things. It has not submitted certified financial statements. Its operations and presumably the investments of its principals are fragmented into at least two and possibly more corporations or other business entities involved in manufacturing and selling its unpatented stroller. With this scanty and unsatisfying information it cannot be assumed that the defendant has and will have continuing ability to satisfy any judgment which may be ultimately rendered.

As to a general restraint against repeated notices there has been insufficient showing on the papers submitted that the legitimate notices of infringement have been so repetitive as to constitute harassment. This is not a case where notices are sent without any intention to sue for patent infringement or otherwise submit the patent for judicial determination. Cf. Betmar Hats, Inc. v. Young American Hats, Inc., 116 F.2d 956 (2d Cir. 1941). Here an action for infringement is pending and, in such case, the burden is heavy to show harassment. The defendant may renew the application if further facts develop.

The foregoing shall constitute findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Settle order.

---

4. The defendant, apparently not unprepared for this argument, tried to evade it by sending a registered letter to plaintiffs informing them of its intention to go into competition despite the patent. This letter cannot elide the fact that there is no cause of action for infringement until the infringement has occurred. See Minnesota Mining & Mfg. Co. v. Plymouth Rubber Co., 178 F.Supp. 591, 596 (N.D. Ill.1959). There is no requirement that a patent owner bring a declaratory judgment to declare the validity of a patent *before* an alleged infringement occurs.