Michael **MEEROPOL** and Robert
Meeropol, Appellants,

v.

Louis **NIZER** and Doubleday & Co.,
Inc., Appellees,
and
Fawcett Publications, Inc., Intervenor-
Appellee.

No. 1246, Docket 74–1587.

United States Court of Appeals,
Second Circuit.

Argued Aug. 16, 1974.

Decided Oct. 17, 1974.

Marshall Perlin, New York City (Samuel Gruber, Stamford, Conn., Max R. Millman, Philadelphia, Pa., of counsel), for appellants.

Robert M. Callagy, New York City (James F. Rittinger, George Berger, Martin Stein, New York City, of counsel), for appellees.

Before OAKES, Circuit Judge, and FRANKEL and KELLEHER, District Judges.*

OAKES, Circuit Judge:

This appeal involves two related federal actions brought by the children of Julius and Ethel Rosenberg (the Meeropols). The first was commenced in the United States District Court for the Southern District of New York against Louis Nizer (Nizer), the author of *The Implosion Conspiracy*, and his hard cover publisher, Doubleday & Co., Inc. (Doubleday); the second was commenced in the United States District Court for the District of Connecticut against Fawcett Publications, Inc. (Fawcett), the paperback publisher-licensee of the same book. The New York action set forth three counts: (1) for statutory copyright infringement, 17 U. S.C. § 101, in connection with the use of letters of Julius and Ethel Rosenberg,[1] (2) for malicious defamation and invasion of privacy through publication of the book; and (3) for common law infringement of and for injury to appellants' property rights in unpublished and uncopyrighted works of their parents. In the subsequent Connecticut action against Fawcett, the Meeropols' complaint asserted the first and third counts of the New York complaint but they subsequently amended their pleadings to include a cause of action for malicious libel and invasion of privacy along the lines of the second count of the New York complaint.

This appeal is from an order of United States District Judge Harold R. Tyler, Jr., in the Southern District of New York staying the appellants from prosecuting the Connecticut action. To understand this opinion fully, it will be necessary to set forth in some further detail the rather complex procedural history of this litigation.

On June 19, 1973, when the Meeropols instituted the New York action, they moved simultaneously for a preliminary injunction enjoining Nizer and Doubleday from continuing the alleged infringement of their parents' letters (*supra* note 1). On July 18, 1973, Judge Tyler denied the motion for a preliminary injunction and a cross motion of Nizer and Doubleday to dismiss the first count of the complaint. Meeropol v. Nizer, 361 F.Supp. 1063 (S.D.N.Y.1973). Answers were filed by Nizer and Doubleday admitting authorship and publication but placing in issue other material allegations of the complaint and pleading various affirmative defenses; these answers were followed by extensive discovery proceedings and pretrial motions by both parties. To date, the litigation has generated a number of written opinions and orders on the part of Judge Tyler.

In December, 1973, the Meeropols learned that Fawcett intended to publish a paperback edition of *The Implosion Conspiracy* which had been a hard cover best seller and book club selection. On December 7, 1973, their lawyer wrote a letter to Fawcett demanding that it cease and desist from printing, publishing or distributing the paperback edition, sending along a copy of the complaint against Nizer and Doubleday. Receiving no answer, the Meeropols instituted the Connecticut action on March 6, 1974, and sought, by way of an order to show cause, a preliminary injunction returnable before District Judge Newman on March 29, 1974.[2]

On March 19, 1974, Fawcett, which was not a party to the New York

---

* Of the Southern District of New York and Central District of California, respectively sitting by designation.

1. In essence it is charged that Nizer in *The Implosion Conspiracy* quoted from some 29 letters of the Rosenbergs which appeared in the book entitled *Death House Letters of Ethel and Julius Rosenberg* (1953), published by Jero Publishing Co.

2. It should be mentioned that no initial demand for a jury trial was made in the New York action, but a demand for a trial by jury was made in the Connecticut action.

action,[3] applied to Judge Tyler for, and was granted, an order to show cause on March 22, 1974, why a stay of the Connecticut action should not be granted, and a temporary restraining order staying the Connecticut action until March 22 was signed. The supporting papers included an affidavit of the attorney appearing for both Fawcett and Doubleday, which presented as the principal ground for the application for a stay the argument that the defenses applicable to defendants Nizer and Doubleday in New York "will equally be applicable to Fawcett in Connecticut" by virtue of certain contractual indemnification agreements between the parties. Further, it was argued that it would be in the interests of judicial economy to have all of the defendants litigate all of the issues in one court.

Accepting these arguments as valid, Judge Tyler subsequently granted the requested stay. While the order of Judge Tyler granting a temporary restraining order on the application of a non-party, *see* Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), seems beyond his powers, we note that the order was for only a three-day period pending oral argument on March 22, 1974. At that time Judge Tyler ruled that he would stay the Connecticut action pending final disposition of the New York action on the condition that Fawcett intervene in the New York action. Thus, whatever jurisdiction the court below lacked at the time of issuing the temporary restraining order it gained when on March 28, 1974, Fawcett did move for leave to intervene and when, on April 3, 1974, that motion was granted. It is that same order of April 3, 1974, permanently staying the appellants from prosecuting the Connecticut action pending final judgment in the New York action which is the order here under appeal.

The appellants argue first that the district court had no jurisdiction to enjoin the Connecticut suit. As we have said, we assume they are correct as of the time the court below granted the temporary restraining order, since Fawcett was then a stranger to the New York proceeding. But when Fawcett was granted leave to intervene in the New York suit, the district court obtained jurisdiction for the order already granted. Where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action. *See* Coakley & Booth, Inc. v. Baltimore Contractors, Inc., 367 F.2d 151 (2d Cir. 1966); National Equipment Rental, Ltd. v. Fowler, 287 F.2d 43 (2d Cir. 1961). This rule is applicable even where the parties in the two actions are not identical. *See, e. g.,* Telephonics Corp. v. Lindly & Co., 291 F.2d 445 (2d Cir. 1961) (where an alleged infringer had sued for declaratory judgment of patent invalidity, a subsequent suit by the patent holder against the alleged infringer's customer would be enjoined where there was an indemnity agreement running from the alleged infringer to the customer and where the customer was added as a plaintiff in the suit for declaratory relief); MacLaren v. B–I–W Group, Inc., 329 F.Supp. 545 (S.D.N.Y. 1971) (where the court in an action for a patent infringement in the Southern District of New York enjoined a suit by the patent holder against the alleged infringer's manufacturer in the Western District of New York where there was an indemnity agreement between the manufacturer and the alleged infringer, the stay of the Western District action being on condition that the defendant manufacturer in the Western District intervene as a party defendant in the Southern District action). *See also* Ur-

---

3. The original motion for an order to show cause was brought only by Fawcett, but on March 20, 1974, counsel representing both Doubleday and Fawcett served both the court and opposing counsel with a letter indicating that the motion was on behalf of Doubleday as well as Fawcett; counsel for the Meeropols apparently did not receive this until March 21.

bain v. Knapp Brothers Manufacturing Co., 217 F.2d 810 (6th Cir. 1954), cert. denied, 349 U.S. 930, 75 S.Ct. 772, 99 L. Ed. 1260 (1955).

■■ By contract, Doubleday has agreed to indemnify Fawcett for claims arising from its publication of the paperback version of Nizer's book. Paragraph 7 of their agreement dated April 27, 1973, contains a warranty by Doubleday that the rights granted to Fawcett are owned by Doubleday and that "the book does not infringe upon any statutory or other copyright, or any right of others whatsoever; also that the book contains no matter which is contrary to law." It also contains in the same paragraph an indemnification agreement by which Doubleday agrees to hold Fawcett harmless against any loss or expense, including counsel fees, "arising out of any breach or alleged breach of any of the foregoing warranties." We see no conflict of interest between Doubleday and Fawcett, and indeed for all practical purposes Doubleday is the real party in interest in the Connecticut action. Under Fed.R.Civ.P. 24(a), Fawcett therefore intervened as of right in the New York action since the disposition of the New York suit might as a practical matter have impaired or impeded Fawcett's ability to protect its interests; by intervening, Fawcett was merely following the procedure essentially approved of, if not applied, in Cresta Blanca Wine Co. v. Eastern Wine Corp., 143 F.2d 1012 (2d Cir. 1944), and International Nickel Co. v. Ford Motor Co., 108 F.Supp. 833 (S.D.N.Y.1952). It is significant that there has been no appeal from that portion of Judge Tyler's order of April 3, 1974, which granted Fawcett's motion for leave to intervene in the New York action.

■■ Appellants argue next that in any event the district court erred as a matter of discretion in enjoining the Connecticut proceedings because the defendants in the two cases are not "in privity" and that adjudication of the issues in the New York action "would not be dispositive of the issues" in the Connecticut case. As to the question of privity, as previously stated, there is an agreement by Doubleday to indemnify Fawcett against claims arising out of the publication of the paperback edition. Appellants argue that the Doubleday-Fawcett indemnification is significantly more limited than one between Nizer and Doubleday since the former does not specifically cover liability for libelous writing or any violation of any right of privacy. We do not read the indemnification agreement running from Doubleday to Fawcett so narrowly. It contains a warranty that the book does not infringe upon "any rights of others whatsoever" which would extend to rights against defamation or invasion of privacy and that the "book contains no matter which is contrary to law."[4]

Appellants argue also that adjudication of the issues in New York would not be dispositive of the issues in Connecticut with respect to the first count of their complaint, inasmuch as Fawcett had written notice for months prior to publication of the claim of copyright misappropriation and infringement and also had notice that appellants claim both defamation and invasion of privacy.[5] They claim that prior notice would be a decisive circumstance in determining whether the defense of fair use of the copyrighted material would be available to Fawcett. They further contend that even were the trier in New York to find good faith and innocent use by Nizer and Doubleday, such a finding would not resolve the issue of good faith on Fawcett's part in Connecticut, so as to permit it the benefit of the fair use

---

4. In an opinion dated July 31, 1974, Judge Tyler granted a motion for summary judgment by Nizer and Doubleday dismissing the libel and invasion of privacy claims.

5. Concededly, however, prior notice to Fawcett would not affect other issues, such as whether there was a valid copyright, whether appellants had standing to sue, whether some of the material was in the public domain or other affirmative defenses.

privilege.[6]  The fact that Fawcett may have had prior notice of appellants' claims does not necessarily legitimize them, however, and it had been held by the district court that

> defendants are likely to prove that their book is a serious, full and readable account of what was a trial of great historical interest; that resort to quotations of certain of the Rosenbergs' letters is important to any serious book on their trial; and that there is little possibility of injury to the plaintiffs.

Meeropol v. Nizer, 361 F.Supp. at 1068. Thus Judge Tyler had held that "plaintiffs are unlikely to prove their first stated claim of statutory copyright infringement by reason of the appropriate defense of fair use." *Id.* at 1070.

So, too, the fact that notice might have a bearing upon punitive damages were the libel and invasion of privacy claims to be substantiated, *see* Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) does not make the underlying claim for relief so different as to prevent the district court from staying the Connecticut action. Appellants make no claim refuting the proposition that as a matter of discretion—absent the elements of privity and differentiation of issues above

mentioned—Judge Tyler's action was incorrect, nor could they do so, since the New York action had been actively litigated, with extensive discovery, for eight months prior to the institution of the Connecticut action; the nexus of the action was New York both with respect to the parties and potential witnesses and documents; Fawcett is located in New York where its editorial work is performed as are both Nizer and Doubleday; and the only connection with Connecticut is that it is the location of Fawcett's principal place of business.[7]

Appellants argue finally that the granting of the stay order was an abuse of discretion because it prejudiced appellants' rights (a) to seek a preliminary injunction in Connecticut and (b) to a jury trial against Fawcett.  Neither of these contentions has any merit.  In the first place, in the action against Nizer and Doubleday appellants sought "the enjoining of any possible paperback publication," Meeropol v. Nizer, 361 F.Supp. at 1066–1067, and this claim was considered and rejected by Judge Tyler before the Connecticut action was brought. While appellants filed a notice of appeal from that order, they thereafter formally withdrew it.  Thus their request for a preliminary injunction in Connecticut was an attempt to relitigate this issue.

---

6. Appellants cite to no authority in making this claim, and we find no authority supporting their position. It may well be that appellants, in referring to the effect of notice to Fawcett of their claims, are in fact referring to the issue of damages in a statutory copyright infringement claim. Under 17 U.S.C. § 101 certain limitations in the amount of recovery for copyright infringement are not applicable when there has been "actual notice to a defendant, either by service of process or other written notice served upon him." However, if this be so, arguments that there are different "issues" involved in the two suits really relate only to the question of damages.

To the extent that there are any substantive differences in the claims against different defendants, it appears to us that they may readily be handled by the trial court in its instructions, or findings or rulings of law in any trial on the merits. It is, moreover, not to be forgotten that claims under Fed.

R.Civ.P. 8 consist of short and plain statements of the claim showing that the pleader is entitled to relief, not allegations of "causes of action," thus avoiding some of the fine distinctions of common law pleading between "evidentiary facts" and "ultimate facts" and "conclusions" and eliminating the rigidity and confusion surrounding the term "cause of action." *See* 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1216 et seq. Essentially the claims for relief in both the amended Connecticut and New York complaints here were the same.

7. We are rather surprised that appellees would have us give weight, but we give none, to Judge Tyler's recollection of a telephone conversation with Judge Newman that the Connecticut court recognized that New York was the proper forum for the litigation and indeed that Judge Newman would have transferred the Connecticut action to New York.

With reference to the claim for a jury trial against Fawcett, in no event could that right be lost even though there were prior determinations of equitable claims. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). It is true that Judge Tyler has held by order dated June 27, 1974, that jury trial as to Nizer and Doubleday was waived, but that demand for a jury trial against Fawcett was "premature" since appellants' counsel had "failed to define the issues as to Fawcett by the filing of a supplemental complaint as suggested by order of this court on April 3, 1974." [8] In making this order of June 27, 1974, Fawcett's motion to strike the jury demand as to it was denied "pending the filing of a supplemental complaint." To the extent that appellants have a constitutional right to trial by jury on the issues surviving for trial, that right can in no way be impaired by virtue of the exercise of trial court discretion either in granting the stay of the Connecticut action or otherwise. The right to jury trial adheres in the action against Fawcett. By intervening in New York it did so subject to the timely demand made against it in the Connecticut action,[9] and to the extent that the district court did not condition its order granting the stay and granting Fawcett's motion for leave to intervene on the preservation of

that right to jury trial, we do so now by this opinion. *Cf.* Christenson v. Diversified Builders, Inc., 331 F.2d 992, 995 (10th Cir.), cert. denied, 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48 (1964); 5 J. Moore, Federal Practice ¶ 38.39[2], at 320 (2d ed. 1971).

Judgment affirmed in accordance with this opinion.

---

8. Appellants' amended complaint against Fawcett, filed in the Connecticut action, was never answered in that court because of the injunction issued with respect to that suit and Fawcett's subsequent New York intervention. Fawcett has since answered the complaint that was originally filed in New York against Nizer and Doubleday. But appellants have not, as requested by Judge Tyler, filed a supplemental complaint in New York naming Fawcett as a defendant. Appellants contend that this is unnecessary as Fawcett's intervention in the New York action incorporated all of the pleadings from the Connecticut suit.

9. This may be an academic question since a timely request for a jury trial as to Fawcett

was made before Judge Tyler, after Fawcett's intervention in the New York action. This was, however, treated as "premature" by Judge Tyler since the New York complaint had not been amended to name Fawcett as a party. In any event, it cannot be deemed too tardy nor, in any case, under Fed.R.Civ.P. 38(c), are the appellants required to specify the issues which they wish to have tried to a jury. The language of that rule specifically states that

In his demand a party *may* specify the issues which he wishes so tried [before a jury]; otherwise he shall be deemed to have demanded trial by jury *for all the issues so triable.*

(Emphasis added.)