### DAYS INNS OF AMERICA, INC., and HFS Inc.

v.

### Janet M. RENO, as the Attorney General of the United States.

### No. P–96–CA–05.

United States District Court, W.D. Texas, Pecos Division.

July 23, 1996.

---

Charles C. High, Jr., El Paso, TX, William L. Killion, Minneapolis, MN, and Edward S.G. Dennis, Jr. of New York City, for Plaintiffs.

Renee M. Wohlenhaus and Thomas M. Contois of the Department of Justice, Disability Rights Section, Washington, DC, for Defendant.

## ORDER ON DECLARATORY JUDGMENT

BUNTON, Senior District Judge.

**BEFORE THE COURT,** in the above-captioned cause of action, is the Complaint for Declaratory Judgment filed by Plaintiffs Days Inns of America, Inc. and HFS, Inc. ("DIA/HFS"), the Motion to Dismiss by Defendant Janet Reno, Attorney General of the United States ("Attorney General"), and various and sundry responses and replies by both parties. After due consideration of the law and facts of this particular case, this Court is of the opinion the Complaint by DIA/HFS should be dismissed for the reasons set out below.

## FACTUAL BACKGROUND

In 1994, the Attorney General began investigating approximately 28 newly constructed Days Inns hotels within a 17 state radius. After various on site inspections by the Attorney General's Office, it concluded that all 28 hotels failed to comply with several accessible design standards of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181–89 ("ADA"). The Attorney General sent letters to DIA/HFS, the owners of the individual hotels, the architects, and

contractors of all 28 hotels informing them of their failure to comply with the ADA.[1]

The Attorney General then sent a second letter to all the parties inviting them to discuss settlement of all violations. The letter also informed the parties that if settlement was not possible, the Attorney General would file suit against them for violating the ADA.[2] By December of 1995, the Attorney General reached agreements and/or consent decrees with 17 of the 28 hotels and sent a letter to DIA/HFS informing them that if the violations of the ADA were not resolved by January 31, 1996, the Attorney General would file enforcement actions against some or all of the remaining 11 hotels in the appropriate federal district courts.[3]

Curiously, the hotel made the basis for jurisdiction with this Court—the Fort Stockton Days Inn—was not one of the 11 potential defendants targeted by the Attorney General's December 18th letter, but was among the first parties to provide the Attorney General with a settlement proposal, and has to date remedied many of the ADA violations. Nevertheless, between September of 1995 and January of 1996, Counsel for DIA/HFS and the Attorney General's Office have participated in numerous telephone calls, meetings, and exchange of draft settlement proposals.[4] According to the Attorney General, Counsel for DIA/HFS tendered their last and best offer of settlement as recent as January 30, 1996, just two days before the filing of the present suit. Such offer was allegedly still on the table until February 5, 1996, when the Attorney General Office phoned DIA/HFS to reject it and discovered that a suit had been filed in this Court. On February 8, 1996, the Department of Justice filed actions against five of the 11 Days Inn hotels. These suits are currently pending and some are set for trial in the United States District Courts for the Eastern District of California, Central District of Illinois, Southern District of Indiana, Eastern District of Kentucky, and District of South Dakota.[5]

## ANALYSIS

In July of 1990, the United States Congress enacted the ADA, and by January of 1992 Title II of the ADA, which prohibits discrimination in privately owned places of public accommodation, became effective.[6] It is estimated there are approximately 43 million "disabled" Americans and that this number will increase as the overall population grows older.[7] The stated purpose of the ADA:

> is to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life; to provide enforceable standards addressing discrimination against individuals with disabilities, and to ensure that the Federal government plays a central role in enforcing these standards on behalf of individuals with disabilities.[8]

---

1. *See* Exhibit A of Defendant's Motion to Dismiss, Letter of March 17, 1995 to Counsel for DIA/HFS.

2. *See* Exhibit B of Defendant's Motion to Dismiss, Letter of July 6, 1995 to Counsel for DIA/HFS.

3. *See* Exhibit C of Defendant's Motion to Dismiss, Letter of December 18, 1995 to Counsel for DIA/HFS.

4. *See* Plaintiffs' Complaint at 5–6.

5. *See* Exhibits D–H of Defendant's Motion to Dismiss.

6. 42 U.S.C. §§ 12101–13; 42 U.S.C. § 12181 note. Titles I, II, and IV prohibit discrimination in employment, public services, and telecommunications, respectively. Title V contains miscellaneous provisions, which require among other things the issuance of technical guidelines and manuals to supplement Titles I, II, III, and IV of the Act.

7. 42 U.S.C. § 12101 (Findings and Purpose); The ADA defines "disability" with respect to an individual as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

8. H.R.REP. No. 485, 101st Cong., 2nd Sess., pt. 2, at 22–23.

It was Congress' goal to meet this need in a "clear, balanced, and reasonable manner."[9] It is also fair to say that both supporters and critics of the ADA agree that it is the most comprehensive civil rights legislation passed by Congress since the Civil Rights Act of 1964.[10] Furthermore, the ADA is expected to have "far-reaching" although sometimes "costly" effects.[11] As is evident with the present declaratory judgment suit and the five pending cases throughout various states, deft legal and procedural maneuvering has been the order of the day. It is this Court's duty to determine whether the present declaratory judgment suit should go forward or not. Thus, a brief look at the law in this area is appropriate.

## I. Declaratory Judgment Act

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, confers no jurisdiction to a court, but instead is a procedural device designed to provide a new remedy to the federal court arsenal.[12] This Court is not bound to provide declaratory relief, and it is a matter for this Court's sound discretion whether to decide a declaratory judgment action.[13] In other words, the Declaratory Judgment Act "gives the court a choice, not a command."[14] Obviously, exercising this Court's discretion does not translate into a denial of declaratory relief solely on the basis of

"whim or personal disinclination."[15] Instead, this Court must take into consideration a number of factors outlined by the Supreme Court, as well as the Fifth Circuit:

1) Whether there is a parallel proceeding in another court in which the matters in controversy between the parties may be fully litigated;[16]

2) whether the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping;

3) whether any possible inequities will arise in permitting the plaintiff to gain precedence in time and forum; and

4) whether the declaratory suit will be inconvenient to the parties or witnesses.[17]

■ Focusing on the first two factors, this Court finds sufficient evidence in the record to deny DIA/HFS's complaint for declaratory judgment. For example, it is undisputed that DIA/HFS and the Attorney General's Office were in on-going and good faith settlement negotiations. It is also undisputed that the Attorney General's Office gave written notice to DIA/HFS that it would exercise its option to file suit against them if a settlement was not procured by January 31, 1996. Viewing the evidence in the light most favorable to the non-movant, this Court still concludes that negotiations between the parties

9. *Id.* at 50.

10. Hearings on S. 933 before the Senate Committee on Labor and Human Resources, 101st Cong., 1st Sess. 70 (1989).

11. 135 CON.REC. S10,789 (daily ed. Sept. 8, 1989) (statement of Sen. Kennedy).

12. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937).

13. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942).

14. *Dresser Industries, Inc. v. Ins. Co. of North America*, 358 F.Supp. 327, 330 (N.D.Tex.), aff'd, 475 F.2d 1402 (5th Cir.1973).

15. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir.1983) (quoting *Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir.1981)).

16. DIA/HFS take an inordinate amount of time arguing about the fact that both this Court and the other five District Courts are Article III Courts. It is true that by and large the cases dealing with declaratory judgments are filed in federal court and the parallel proceedings are filed in state court. However, the jurisprudence for declaratory judgment actions makes no distinction between the types of courts for purposes of staying or dismissing a suit. *See* 17A Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4247, at 118–24 n. 5–8 (2d ed. 1988); *Meeropol v. Nizer*, 505 F.2d 232 (2d Cir. 1974); *Creighton Omaha Regional Health Care Corp. v. Lomas & Nettleton Co.*, 486 F.Supp. 392 (D.Neb.1980); *Thermal Dynamics Corp. v. Union Carbide Corp.*, 214 F.Supp. 773 (D.N.Y.1963).

17. *Wilton v. Seven Falls Co.*, —— U.S. ——, ——––––, 115 S.Ct. 2137, 2140–41, 132 L.Ed.2d 214 (1995); *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 29 (5th Cir.1989). The *Rowan* factors are neither exhaustive, nor exclusive or mandatory. *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 96 (5th Cir.1992).

were on-going up until at least two days before the filing of this suit.[18] In reviewing the pleadings, this Court cannot help but draw an analogy between the present case and one before this Court some 13 years ago, *Mission Ins. Co. v. Puritan Fashions Corp.,* and later affirmed by the Fifth Circuit.[19] In that case this Court stated:

> Plaintiff caused Defendant to delay filing suit in California by representing that Plaintiff was considering the merits of the claim and by allowing an extension of the one year limitation period. But for these representations and implications, Defendant would have been the first to file an action presenting the same issues (plus a few more), and the forum for trial of the issues presented in this suit would have been in California. Therefore, in the interests of judicial economy and for the convenience of the parties and the witnesses, the Court, in an exercise of its discretion, hereby dismisses the lawsuit.[20]

As with the plaintiff in the *Mission* case, DIA/HFS entered into discussions and the Attorney General's Office bypassed its deadline of January 31, 1996 for filing suit in one or all of the 11 targeted hotels. The evidence is sufficient to support the conclusion that DIA/HFS's February 1, 1996 filing was in anticipation of up to 11 suits by the Department of Justice. DIA/HFS was notified well in advance of the potential suits, and despite the fact that the Fort Stockton Days Inn was not on the target list, they filed the present declaratory action within the Western District of Texas for reasons unknown to the Court at this time.[21]

18. *See* Plaintiff's Complaint at 5–6.

19. 706 F.2d 599 (5th Cir.1983).

20. *Id.* at 601.

21. The Attorney General's Office surmises that DIA/HFS seeks the use of the recent Fifth Circuit opinion in *Neff v. American Dairy Queen,* 58 F.3d 1063 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 704, 133 L.Ed.2d 660 (1995) (holding that the franchisor of the Dairy Queen chain was not required by Section 302 of the ADA to remove architectural barriers to access in restaurants built before the ADA became law). If DIA/HFS indeed is relying on such precedent, this Court finds such reliance to be of dubious nature given

■ "The federal declaratory judgment is not a prize to the winner of a race to the courthouses."[22] At least one circuit has stated that it shall "avoid acting as an umpire on 'race to the courthouse' disputes, stating merely that 'apparent anticipation of litigation' is an 'equitable consideration' and 'may be a factor' in allowing a later filed action to proceed."[23] DIA/HFS argue that the Fifth Circuit subscribes to the "first-to-file rule;" however, the cases in this Circuit seem to fall in line with the Second Circuit cases mentioned above. In *Travelers Ins. v. Louisiana Farm Bureau Federation,*[24] the Fifth Circuit stated:

> Hurdle's contention that the Fifth Circuit looks only to the chronological order in which lawsuits are filed is quixotic. If this Court had adopted such a strict chronological approach, we clearly would not have enumerated [the *Rowan* ] factors which must be considered, rather than *one* date of filing factor. Moreover, the second abstention factor—requiring the court to consider whether the declaratory suit was filed *in anticipation* of a lawsuit filed by the declaratory defendant—inherently recognizes that in some cases where the declaratory plaintiff was, indeed, the first to file, the court should nonetheless abstain.[25]

This Court finds that the parallel proceedings in California, Illinois, Indiana, Kentucky, and South Dakota involve the same parties to the present suit, and the matters in controversy between the parties may be fully litigated by any of those Courts. This Court also finds the present declaratory complaint was filed in anticipation of other suits and

the distinguishable facts and section of the ADA addressed in *Neff* versus that found in the present suit.

22. *Perez v. Ledesma,* 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 694 n. 12, 27 L.Ed.2d 701 (1971) (Brennan, J. dissenting).

23. *Federal Ins. Co. v. May Department Stores Co.,* 808 F.Supp. 347, 350 (S.D.N.Y.1992) (quoting *Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir.1978)).

24. 996 F.2d 774 (5th Cir.1993).

25. *Id.* at 779 n. 15 (emphasis in original).

was being used for the purpose of forum shopping. Accordingly,

**IT IS ORDERED** the Motion to Dismiss by Defendant Janet M. Reno, Attorney General of the United States is hereby **GRANTED** and this declaratory judgment suit is **DISMISSED** forthwith.